# MILLBROOK OWNERS ASSOCIATION, INC. *v.*
# HAMILTON STANDARD ET AL.
## (SC 16358)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 7, 2000—officially released July 24, 2001

*Kenneth J. Bartschi*, with whom were *Susan M. Cormier* and, on the brief, *Linda W. Alderman* and *Myles H. Alderman, Jr.*, for the appellant (plaintiff).

*Robert R. Simpson*, with whom were *Elizabeth C. Barton* and, on the brief, *Barbara A. Frederick*, for the appellee (named defendant).

*Diane W. Whitney*, with whom, on the brief, were *Peter Knight* and *Patricia A. Shaw*, for the appellee (defendant Alcoa, Inc.).

*Andrew J. O'Keefe*, with whom was *Kathryn M. Cunningham*, for the appellee (defendant Anything Printed).

*Anthony B. Corleto* and *Lori A. Eaton* filed a brief for the appellee (defendant Broad Brook Center Associates).

*Opinion*

BORDEN, J. The dispositive issue in this appeal[1] is whether the trial court abused its discretion in dismissing the plaintiff's action for violating a certain discovery order of the court. On September 14, 1998, the trial court entered a certain discovery order against the plaintiff, Millbrook Owners Association, Inc., providing that a judgment of dismissal would enter unless, within a specified period of time, the plaintiff filed certain disclosures and complied with certain other orders of the court. On October 26, 1998, the court found that the plaintiff had failed to comply with the disclosure order and, accordingly, rendered judgment dismissing the action. We conclude that, under the particular circumstances of this case, the court abused its discretion and, accordingly, we reverse the judgment of dismissal.

This case has followed a tangled procedural path in the trial court.[2] In December, 1995, the plaintiff, a condominium owners association that operates the Millbrook Condominiums in Broad Brook, brought this action against the defendants,[3] claiming reimbursement

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c).

[2] To date, the trial court record comprises eleven trial court manila folders taking up slightly more than two feet of shelf space. No answer has been filed yet by the defendants involved in this appeal.

[3] There were numerous original defendants in the trial court. Several defendants have been defaulted for failure to appear, one defendant successfully moved for summary judgment, and one defendant settled with the plaintiff and, therefore, the complaint subsequently was withdrawn against it. The defendants who have participated in this appeal are: Hamilton Standard, a division of United Technologies Corporation; Alcoa Inc.; Anything

for losses allegedly caused by contamination of the soil and groundwater of the real property on which certain of the condominiums are located. The issues in this appeal have their genesis in a deposition of Richard Ryan, a former employee of the named defendant, Hamilton Standard, taken by the plaintiff on July 22, 1997, and August 15, 1997.

Before the deposition began on July 22, the defendants objected to the presence at the deposition of David Lis, who was not a party to the action. Upon the plaintiff's representation that Lis worked for Apex Environmental, Inc., which was acting as the plaintiff's expert, and that the plaintiff formally would disclose Lis as an expert witness[4] within thirty days, the defendants permitted Lis to remain in the room for the deposition of Ryan. The deposition continued on August 15, when Garry Jacobsen,[5] another employee of Apex Environmental, Inc., was in attendance. The defendants objected to his attendance, but permitted Jacobsen to

Printed; Textron, Inc.; Textron Specialty Materials (AVCO); James R. Testa and John Bartus, doing business as Broad Brook Center Associates; and Connecticut Building Corporation. Subsequent to the filing of the plaintiff's complaint, Hamilton Standard became Hamilton Sundstrand Corporation. Although at some points in the trial record only one or more of the defendants raised objections or made other assertions, we refer herein to these participating defendants collectively as the defendants, without more specific attribution, except where otherwise indicated. Furthermore, although some of the defendants have presented somewhat differing arguments on appeal, we consider those arguments collectively, without more specific attribution, except where otherwise indicated.

[4] Although there was no discussion at this point of the specific rule of practice pursuant to which Lis was to be disclosed as an expert, the plaintiff does not dispute that, at that point, Lis was to be disclosed as an expert pursuant to Practice Book § 13-4 (4), then § 220 (D). See footnote 6 of this opinion. In this connection, we note that at the time of the trial court proceedings in the present case, a different revision of the Practice Book with a different numbering system was applicable. For purposes of clarity and ease, however, references herein are to the current revision of the Practice Book.

[5] For consistency purposes, Garry Jacobsen is the spelling used in this opinion, due to spelling inconsistencies throughout the pleadings.

attend the deposition upon the plaintiff's specific representation that, within the same thirty day period, the plaintiff would disclose Jacobsen as an expert pursuant to Practice Book § 13-4 (4),[6] which governs disclosure of experts whom parties expect to call to testify at trial.

[6] Practice Book § 13-4 provides: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Section 13-2 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(1) (A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (B) Unless otherwise ordered by the judicial authority upon motion, a party may take the deposition of any expert witness disclosed pursuant to subdivision (1) (A) of this rule in the manner prescribed in the rules of practice Section 13-26 et seq. governing deposition procedure generally.

"(2) A party may discover facts known or opinions held by an expert who had been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Section 13-11 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

"(3) Unless manifest injustice would result, (A) the judicial authority shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (1) (B) and (2) of this rule; and (2) with respect to discovery obtained under subdivision (1) (B) of this rule the judicial authority may require, and with respect to discovery obtained under subdivision (2) of this rule the judicial authority shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

"(4) In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who

When the plaintiff had not filed the disclosures as to Lis and Jacobsen by August 20, 1997, the defendants moved to compel disclosure. On September 29, 1997, the court, *Teller, J.*, granted the motion without argument, and ordered the plaintiff to pay $250 in costs to the defendants.[7] The plaintiff moved for reargument on that motion.[8] Judge Teller granted reargument and, on November 3, 1997, reaffirmed his ruling on the motion to compel.

By the time of the trial court's reaffirmation of its ruling on November 3, 1997, however, the plaintiff had determined that Lis and Jacobsen would not testify at trial. On November 17, 1997, therefore, the plaintiff filed a "Disclosure of David Lis and Gar[r]y Jacobs[e]n As Experts." This disclosure provided in relevant part:

is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. In response to any such expert disclosure, any other party may disclose the same categories of information with respect to expert witnesses previously disclosed or a new expert on the same categories of information who are expected to testify at trial on the subject for that party. Any such expert or experts shall similarly be made available for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

[7] This payment has been made, and is not involved in this appeal.

[8] The bases of the plaintiff's motion to reargue were that the plaintiff and several other defendants had indicated their desire for oral argument on the motion, and that the plaintiff's counsel did not attend court on September 29, 1997, because of a death in his family, of which the defendants had been notified.

"Pursuant to this Court's order of November [3], 1997, *and Practice Book [§ 13-4 (4)]* . . . ." (Emphasis added.) It also, however, explained the then current status of Lis and Jacobsen as experts, stated that the plaintiff had "no present expectation of calling either of [them] as an expert witness at the trial in this case," and stated further that Lis and Jacobsen were *"experts for the plaintiff only as defined by Practice Book [§ 13-4 (2)]."*[9] (Emphasis added.) Thus, although it purported to disclose them pursuant to § 13-4 (4), it made clear that they were in fact experts, not under § 13-4 (4), but under § 13-4 (2), which governs disclosure of experts whom parties have retained in preparation for litigation but whom they do *not* expect to call to testify at trial. See

[9] The plaintiff's disclosure, filed November 17, 1997, provided: "Pursuant to this court's order of November [3], 1997, and Practice Book [§ 13-4 (4)] [the plaintiff] hereby makes the following disclosure:

"1. [The plaintiff] has retained Apex Environmental, Inc. ('Apex Environmental'), to review and provide expert analysis of environmental reports submitted by the Consultants retained by the Defendant Hamilton Standard Division of United Technologies with regard to Consent Order #069 between Hamilton Standard and the Connecticut Department of Environmental Protection (the 'Consent Order').

"2. The expert analysis of Apex [E]nvironmental was deemed necessary and desirable to assist the board members of the [plaintiff] in making informed decisions with regard to the Consent Order and to further assist the [plaintiff] by providing comments on its behalf to the [department of environmental protection].

"3. Mr. Lis and Mr. Jacobs[e]n have assisted in the analysis of information submitted by [C]onsultants to the defendant Hamilton Standard which does [relate] to the instant case, however [the plaintiff] has no present expectation of calling either of these men as an expert witness at the trial in this case.

"4. Based upon the foregoing, Mr. Lis and Mr. Jacobs[e]n are experts for the plaintiff only as defined by Practice Book [§ 13-4 (2)].

"5. The pleadings have not been closed, no trial date has been set and no final determination has been made by the [p]laintiff as to which, if any, experts will be called to testify at the trial of the above captioned case.

"6. The plaintiff is still awaiting production of documents, first requested in April of this year, from Hamilton Standard Division of United Technologies. Further, [the plaintiff] is still awaiting dates for depositions of key witnesses who are employees of Hamilton Standard Division of United Technologies.

"7. The information disclosed by Hamilton Standard Division of United Technologies may form all or part of the factual basis for expert opinions."

footnote 6 of this opinion. The parties then scheduled depositions of Lis and Jacobsen for December 23 and 24, 1997, but those depositions were canceled by the attorney for the defendant Anything Printed, as a result of which their depositions remained subject to rescheduling.

Meanwhile, on December 12, 1997, the case was dismissed under the dormancy program, despite the plaintiff's request for an exemption and the lack of any objection to an exemption by the defendants. On April 27, 1998, over the objections of the defendants, the dismissal was vacated and the case was restored to the docket.

On May 6, 1998, Hamilton Standard moved to dismiss the case because the plaintiff had not disclosed Lis and Jacobsen pursuant to § 13-4 (4).[10] The plaintiff objected to the motion to dismiss, asserting that, "[a]s the undersigned has advised [Hamilton Standard], at this time . . . Lis and Jacobsen have been retained by the Plaintiff to interpret reports submitted by [Hamilton Standard's] consultants but *not* as witnesses for trial."[11] (Emphasis in original.)

---

[10] Hamilton Standard asserted that the plaintiff had violated "the Court's Order dated November 3, 1997 (*Teller, J.*), which compelled plaintiff to formally disclose David Lis and Garry Jacobs[e]n as Practice Book [§ 13-4 (4)] expert witnesses by December 3, 1997." It also asserted that the plaintiff had breached an agreement with Hamilton Standard to disclose Lis and Jacobsen as expert witnesses pursuant to § 13-4 (4), "effectively prohibiting Hamilton Standard from conducting the necessary discovery to defend this case. Plaintiff attempts [to justify] its disregard of this Court's Order by making the specious claim that Mr. Lis and Mr. Jacobs[e]n are non-testifying consultants pursuant to Practice Book § [13-4 (2)]. Plaintiff only made this claim, however, after the Court ordered plaintiff to disclose its experts pursuant to Practice Book § [13-4 (4)]."

[11] The plaintiff also asserted: "In fact, it is entirely possible that other consultants will be selected as 'expert witnesses.' " The plaintiff further asserted that the "Plaintiff has fully disclosed Mr. Lis and Mr. Jacobsen pursuant to Practice Book [§ 13-4 (2)]." In addition, the plaintiff asserted that "Mr. Lis and Mr. Jacobsen have primarily interpreted the information and data gathered by the [Hamilton Standard's] own consultants for conveyance of that information to the members of [the plaintiff]." The plaintiff

Thereafter, on May 20, 1998, the case was transferred to the complex litigation docket. The case subsequently was assigned to the court, *Aurigemma, J.* The motion to dismiss was heard by Judge Aurigemma on September 14, 1998. At the conclusion of the hearing, the court entered a conditional order of dismissal. On September 18, 1998, the plaintiff filed what it regarded as a compliance with the court's conditional order of dismissal. Thereafter, the defendants renewed their motion to dismiss, and the matter came before the court on October 26, 1998. At the conclusion of the hearing, the court rendered judgment dismissing the action. This appeal followed. We discuss in detail in part III of this opinion the colloquies that occurred at both the September 14 and October 26, 1998 hearings, and the plaintiff's intervening filing on September 18, 1998.[12]

## I

We first set out the general jurisprudential background of the issues, and the various rules of practice involved in this case. One source of the trial court's authority to impose sanctions is the court's inherent power. We have long recognized that, apart from a specific rule of practice authorizing a sanction, "the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules. *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984); *Stanley* v. *Hartford*, 140 Conn. 643, 648, 103 A.2d 147 (1954)." *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 232–33, 543 A.2d 728 (1988). Our trial courts have "the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation

also denied Hamilton Standard's claim of prejudice, asserting that Hamilton Standard had not yet filed its answer.

[12] On November 12, 1998, the plaintiff moved for reargument and reconsideration of the motion to dismiss, which the court denied. We briefly address these proceedings as well in part III of this opinion.

conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999); see also *Fattibene* v. *Kealey*, 18 Conn. App. 344, 358–60, 558 A.2d 677 (1989).

In addition, our rules of practice, adopted by the judges of the Superior Court in the exercise of their inherent rule-making authority; *Fattibene* v. *Kealey*, supra, 18 Conn. App. 356; General Statutes § 52-29[13] also provides for specific instances in which a trial court may impose sanctions. For example, Practice Book § 13-14 (a)[14] provides that, in general terms, if a party fails to

[13] General Statutes § 52-29 provides: "(a) The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.

"(b) The judges of the Superior Court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

[14] Practice Book § 13-14 provides: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply

comply with certain discovery obligations, the court "may, on motion, make such order as the ends of justice require," including entry of an order establishing as a fact the matters in question, prohibiting the entry into evidence of designated matters, entry of a default, nonsuit or dismissal, and an award of costs and attorney's fee. Furthermore, Practice Book § 13-4 (4); see footnote 6 of this opinion; provides that, in general terms, if a party fails timely to disclose the name and substance of the opinion of an expert whom the party "expect[s] to call [as] an expert witness at trial," the court may, "upon motion . . . preclude such testimony . . . ."

## II

With this background in mind, we turn to the plaintiff's specific claims. We first consider the plaintiff's claim that the trial court lacked authority to dismiss the case because: (1) the plaintiff had no duty to disclose its expert witnesses under § 13-4 (4) before the pleadings were closed; and (2) § 13-4 (4) limits the available sanctions for improper disclosure regarding such witnesses to the exclusion of their testimony. We disagree.

This claim rests on the premise that the trial court, in dismissing the action, acted pursuant to § 13-4 (4). Thus, the first aspect of the plaintiff's claim is based on the textual requirement that the disclosure be accomplished "within a reasonable time prior to trial. . . ." Practice Book § 13-4 (4). The plaintiff contends that this temporal provision means that no such disclosure may be required at least until the pleadings are closed. The second aspect of the claim is based on the textual provision that, if proper disclosure is not made,

from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

"such expert shall not testify" if the court determines that late disclosure would cause undue prejudice, would cause undue interference with the orderly progress of the trial, or involved bad faith delay by the nondisclosing party. Practice Book § 13-4 (4). The plaintiff contends that this provision is exclusive and, therefore, a court acting under § 13-4 (4) is limited to precluding testimony and may not dismiss an action. We need not decide the merits of either contention, however, because we agree with the defendants that the trial court acted, not pursuant to § 13-4 (4), but pursuant to either § 13-14; see footnote 14 of this opinion; or its inherent power to impose reasonable sanctions.

It is true, as the plaintiff suggests, that under the detailed provisions of § 13-4 (4), a trial court, in imposing a sanction under that section, is limited to precluding the testimony of an expert whom a party expects to call as a witness at trial. Under those provisions, for example, in order for the court to impose the sanction of preclusion, there must be a "motion to preclude such testimony," and the court must determine "that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ." Practice Book § 13-4 (4).

That does not mean, however, that, as the plaintiff's argument also suggests, § 13-4 (4) defines the only circumstances under which a court may impose sanctions for violation of a discovery rule or order involving an expert whom a party expects to call at trial, or that § 13-4 (4) defines the only sanction available for such a violation. In other words, we do not read § 13-4 (4) as precluding a trial court, in appropriate circumstances, from imposing reasonable sanctions under either the broader, more general provisions of § 13-14, or under

the court's inherent power, so long as that imposition is not inconsistent with the provisions of § 13-4 (4). Although the provisions of § 13-4 (4) are specific and detailed, there is no reason to think that, when the judges adopted them, they intended them to displace either the court's inherent power to impose sanctions, or the more general provisions of § 13-14, which also deals with violations of discovery orders. The more plausible inference is that these provisions and powers operate in conjunction, rather than in conflict, with each other. That interpretation is consistent with our established jurisprudence that the court's inherent powers to impose sanctions exist in addition to the specific rules of practice authorizing such imposition. See, e.g., *Jaconski* v. *AMF, Inc.*, supra, 208 Conn. 232–33.

It is clear from the record that neither the defendants' motion to dismiss nor the court's action was based on a violation of § 13-4 (4). As we discuss in part III of this opinion, it is true that both the defendants and the court referred to the disclosure required of the plaintiff as a "[§ 13-4 (4)] disclosure." The motion requested, however, that "*[p]ursuant to Practice Book § [13-14]*,"[15] the court "enter a judgment of dismissal" for the plaintiff's purported failure to comply with Judge Teller's order "to formally disclose David Lis and Garry Jacobs[e]n as Practice Book § [13-4 (4)] expert witnesses . . . ." (Emphasis added.) Similarly, at the September 14 hearing, the court's conditional order of dismissal was issued "for violation of Judge Teller's two orders to disclose [Lis and Jacobsen] as experts and for [violation of] two agreements on the record with [Hamilton Standard's counsel] . . . ."

Thus, the underpinning of the conditional order of dismissal, and the subsequent October 26, 1998 judg-

[15] The motion referred to Practice Book § 231 (e), which is the precursor to the current § 13-14.

ment of dismissal, was not an untimely disclosure in violation of § 13-4 (4), but the broader ground of the plaintiff's purported failure to abide by Judge Teller's previous orders and the plaintiff's purported failure to meet the conditions of the court's September 14 order. This underpinning is most plausibly understood as rooted either in the provisions of § 13-14 or the court's inherent power. Section 13-14 provides for sanctions for the failure of a party "to answer interrogatories or to answer them fairly," for "intentionally answer[ing] them falsely or in a manner calculated to mislead," and for failing "otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11," which also deal with answers to interrogatories. The purported failure of the plaintiff to respond to the defendants' demand, to which the plaintiff initially had agreed, to disclose the opinions of Lis and Jacobsen that they were expected to give as testimony at trial, and Judge Teller's orders accordingly, could have been seen by Judge Aurigemma as falling under the terms of § 13-14. Similarly, and apart from § 13-14, the court could have seen that same failure as justifying the sanction of dismissal under the court's inherent sanctioning power.

### III

The plaintiff also claims that, if the court had the authority to dismiss the case, it abused its discretion in doing so. We conclude that, although the court had such authority, it improperly employed its authority to do so in the circumstances of this case.

As we have indicated, a court may, either under its inherent power to impose sanctions in order to compel observance of its rules and orders, or under the provisions of § 13-14, impose sanctions, including the sanction of dismissal. In this connection, we agree with the defendants that, in the present case, the court was

acting under either—or both—grants of authority. It is not necessary, however, to determine which grant of authority it acted under, because the standards for gauging the propriety of its action are the same under either.

Traditionally, we have reviewed the action of the trial court in imposing sanctions for failure to comply with its orders regarding discovery under a broad abuse of discretion standard. We have stated: "The factors to be considered by the court include: (1) whether noncompliance was caused by inability, rather than wilfulness, bad faith or other fault; (2) whether and to what extent noncompliance caused prejudice to the other party, including the importance of the information sought to that party's case; and (3) which sanction would, under the circumstances of the case, be an appropriate judicial response to the noncomplying party's conduct. *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 144, 470 A.2d 246 (1984). As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. See, e.g., *Pool* v. *Bell*, 209 Conn. 536, 541, 551 A.2d 1254 (1989); *DiPalma* v. *Wiesen*, 163 Conn. 293, 298–99, 303 A.2d 709 (1972)." *Biro* v. *Hill*, 231 Conn. 462, 464–65, 650 A.2d 541 (1994). "In reviewing a claim that the court has abused this discretion, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . *Rokus* v. *Bridgeport*, 191 Conn. 62, 72, 463 A.2d 252 (1983); *Pool* v. *Bell*, supra [541]; *Rullo* v. *General Motors Corporation*, [208 Conn. 74, 74–75, 543 A.2d 279 (1988)]. The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented. Never will the case on appeal look as it does to a [trial court] . . . faced with the need to

impose reasonable bounds and order on discovery. *Hull v. Eaton Corporation,* 825 F.2d 448, 452 (D.C. Cir. 1987)." (Internal quotation marks omitted.) *Mulrooney v. Wambolt,* 215 Conn. 211, 222, 575 A.2d 996 (1990).

At the same time, however, we also have stated: "[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . *State v. Martin,* 201 Conn. 74, 88, 513 A.2d 116 (1986)." (Internal quotation marks omitted.) *Gateway Co. v. DiNoia,* 232 Conn. 223, 239, 654 A.2d 342 (1995). In addition, the court's discretion should be exercised mindful of the "policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. *Snow v. Calise,* 174 Conn. 567, 574, 392 A.2d 440 (1978). The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves . . . . *In re Dodson,* 214 Conn. 344, 363, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. *Johnson v. Zoning Board of Appeals,* 166 Conn. 102, 111, 347 A.2d 53 (1974)." (Internal quotation marks omitted.) *Coppola v. Coppola,* 243 Conn. 657, 665–66, 707 A.2d 281 (1998). Therefore, although dismissal of an action is not "an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority"; *Fox v. First Bank,* 198 Conn. 34, 39, 501 A.2d 747 (1985); see also *Pavlinko v. Yale-New Haven Hospital,*

supra, 192 Conn. 145 (dismissal proper where party's disobedience intentional, sufficient need for information sought is shown, and disobedient party not inclined to change position); the court "should be reluctant to employ the sanction of dismissal except as a last resort." *Fox* v. *First Bank,* supra, 39. "[T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of" the other party and the court. *Pietraroia* v. *Northeast Utilities,* 254 Conn. 60, 75, 756 A.2d 845 (2000). It is inherent in these principles that the articulation by the court of the conditions with which the party must comply be made with reasonable clarity.

Upon reflection, we conclude that the broad abuse of discretion standard that we have been employing for the imposition of sanctions for violation of discovery orders, and for our appellate review thereof, is inaccurate, because it masks several different questions that in fact are involved in the question of when a court is justified in imposing such sanctions. We therefore now take the opportunity to clarify that standard by articulating those specific questions. In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met.

First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo.

Second, the record must establish that the order was in fact violated. This requirement poses a question of

fact that we will review using a clearly erroneous standard of review.

Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion.

Application of these principles leads us to conclude that the court improperly dismissed the plaintiff's action because the first part of the test was not met, namely, the conditions of compliance with the trial court's order were not articulated with reasonable clarity, and the record does not establish that, notwithstanding that lack of clarity, the plaintiff nonetheless understood the trial court's intended meaning. A proper understanding of this conclusion requires a brief discussion of the differences between Practice Book § 13-4 (2) and (4); see footnote 6 of this opinion; because both the defendants and the court repeatedly referred to these subsections in a shorthand reference, and the record discloses that, in our view, the precise intended meaning of that shorthand reference was not made reasonably clear to the plaintiff, whose understanding of those references legitimately differed from that of the defendants and the court.

Section 13-4 (2) governs disclosure of facts known or opinions held by an expert, retained by a party in preparation for trial, but "who is *not* expected to be called as a witness at trial . . . ." (Emphasis added.) Insofar as is relevant to this case, § 13-4 (2) provides that the other party may discover those facts or opinions "only . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Thus, pursuant to this section, if a party has retained an expert in preparation for trial, but the party does not expect to call that expert

as a testifying witness in the trial, what the expert has communicated to the party regarding his or her opinions is not discoverable by the opposing party unless the court so orders, based on the exceptional circumstances standard. Section 13-4 (4), in contrast, governs disclosure of facts known or opinions held by an expert whom a party "expect[s] to call [as] an expert witness at trial . . . ." Section 13-4 (4) requires that the party disclose "the name of th[e] expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion . . . ." Thus, if a party intends to call an expert witness to testify at trial, the party is required to disclose the identity of the expert and the substance of the facts and opinions, and their grounds, to which the expert is expected to testify—in sum, the party is required to disclose the substance of the expert's intended testimony.

In determining whether the court's order was reasonably clear, we focus on what preceded the hearings held on September 14, 1998, and October 26, 1998, as well as on what occurred at those hearings. It is not disputed that the plaintiff originally had represented to the defendants that Lis and Jacobsen would testify at trial and that, therefore, their intended testimony would be disclosed pursuant to § 13-4 (4). It is also not disputed, however, that prior to the September 14 hearing, the plaintiff had determined that they would not testify at trial, had formally disclosed that determination to the defendants and the court, and, accordingly, had formally disclosed that they were experts the disclosure of whose opinions were governed, not by subsection (4) of § 13-4, but by subsection (2). Furthermore, despite the defendants' intimations of impropriety in that ultimate determination by the plaintiff regarding

the status of Lis and Jacobsen,[16] there is no suggestion in this record—and the trial court did not find, either explicitly or implicitly—that there had been any impropriety in that change in their status. Indeed, as early as November 17, 1997, nearly one year prior to the September, 1998 hearing, the plaintiff had filed a formal disclosure indicating their nontestimonial status, and repeated that disclosure in May, 1998. Moreover, it is not disputed that when Judge Teller had entered his order of November 3, 1997, requiring the plaintiff to disclose regarding Lis and Jacobsen under § 13-4 (4), he had been unaware of the change in the status of Lis and Jacobsen, a change that the plaintiff disclosed to the defendants two weeks later, on November 17. Finally, it is not disputed that, despite the characterization of Judge Teller's actions as constituting *two* orders purportedly violated by the plaintiff, functionally there was but one, because the first had been entered without the requested oral argument and the second merely affirmed the first. Thus, when the defendants moved, in May, 1998, for dismissal of the action based on the purported failure of the plaintiff to disclose the substance of the intended testimony of Lis and Jacobsen in violation of Judge Teller's order, they already had been informed that, contrary to the plaintiff's original intention, Lis and Jacobsen were *not* expected to testify

---

[16] When, in May, 1998, the defendants moved to dismiss the case, they characterized as "specious" the represented status of Lis and Jacobsen as nontestifying experts under § 13-4 (2). We fail to discern anything specious about that characterization. Certainly, there is nothing in our rules of practice that requires a party, having designated an expert pursuant to § 13-4 (4) as one whom the party expects to testify, to change its mind and subsequently limit the disclosure to the provisions of § 13-4 (2). Nor is there any basis in this record for a finding—and the trial court made no finding, either explicitly or implicitly—that when the plaintiff first secured Hamilton Standard's permission for Lis and Jacobsen to attend Ryan's deposition on the representation that they would be testifying expert witnesses, that representation was fraudulent and did not accurately state the plaintiff's good faith intention at that time.

at trial, and that the plaintiff regarded them—justifiably, in our view—as experts whose opinions would be discoverable upon court order pursuant to § 13-4 (2).

It was in that motion to dismiss that the defendants first employed what we view as a shorthand reference, which the defendants subsequently continued to employ, and which the court ultimately adopted. The meaning of that shorthand reference was not free of ambiguity, however, and its intended meaning was not made reasonably clear to the plaintiff. The shorthand reference was that the defendants repeatedly referred to Lis and Jacobsen as "Practice Book [§ 13-4 (4)] expert" witnesses. See footnote 10 of this opinion. As the colloquies in the ensuing hearings indicate, the defendants used that shorthand reference—"§ 13-4 (4) experts"—to mean: witnesses whose facts and opinions, as expressed to the plaintiff, were to be disclosed to the defendants, even though the plaintiff did *not* intend to call them as witnesses at trial, or, at the least, *irrespective* of whether the plaintiff so intended. In other words, when the defendants and the court referred to Lis and Jacobsen as "§ 13-4 (4) experts" or "§ 13-4 (4) witnesses," what they meant was that, although they were in fact witnesses whose opinions were covered by § 13-4 (2), namely, witnesses who were *not* expected to testify at trial, they were to be treated for purposes of disclosure *as if* they were witnesses who were expected to testify at trial, and their opinions were to be disclosed *as if* those opinions were those that they would give if called to testify at trial. The difficulty with this shorthand reference is that, although it was certainly a plausible meaning and certainly would have constituted a justifiable obligation to impose on the plaintiff, in light of the history of the case up to that time, that more elaborate meaning of the shorthand reference was not made sufficiently clear to the plaintiff prior to the dismissal of the case.

Lis and Jacobsen were not, as the defendants kept insisting, witnesses who were expected to testify at trial; they were, as the plaintiff also kept insisting, witnesses who were *not* expected to testify at trial. Thus, their status fell, not under subsection (4) of § 13-4, but under subsection (2). Moreover, the colloquies at the two hearings indicate that the trial court employed the same shorthand reference with the same intended meaning. The colloquies also disclose, however, that the plaintiff did not take the same meaning from that shorthand reference, and that, because that reference, although perhaps convenient, did not clearly convey its meaning to the plaintiff and was in fact inaccurate, the plaintiff cannot be charged with knowledge of that intended meaning. Indeed, the same colloquies indicate that the plaintiff consistently displayed its different understanding of the shorthand reference and the difficulty it encountered in acquiescing to what it regarded as an inaccurate characterization of the witnesses in question as a result of the reference.

At the September 14, 1998 hearing, the plaintiff acknowledged that, at the depositions, it had agreed "to make the [§ 13-4 (4)] disclosure" of Lis and Jacobsen. It then explained that, subsequent to that agreement, it had determined that "it was unlikely that [Lis and Jacobsen] would become the expert witnesses in the technical sense that they would not be the witnesses to provide testimony," and that the plaintiff orally had informed Hamilton Standard of that fact before Hamilton Standard filed its motion to dismiss.[17] The court asked the plaintiff, "How do you get around basically disobeying Judge Teller's order, which he issued

---

[17] This fact also had been made clear in the plaintiff's November 17, 1997 disclosure referred to previously, as well as in the plaintiff's May 27, 1998 response to the Hamilton Standard's May 6, 1998 motion for judgment of dismissal.

twice?"[18] The plaintiff responded that "[i]t is not contempt of court to disclose a witness as a [§ 13-4 (2)] witness when the decision has been made they'll not be a [§ 13-4 (4)] witness. It was my belief and still is my belief, Your Honor, that it would have been far more egregious for me to disclose these two witnesses as our [§ 13-4 (4)] witnesses; leave the parties believing they were our [§ 13-4 (4)] witnesses, knowing at the time we filed it, that they were not likely to be the witnesses and having these parties later object that we misled them when we knew someone else was likely to be our [§ 13-4 (4)] witness. So I was faced with what, to me, was a fairly simple choice. I have an order saying disclose your expert witness, which the court believes was a [§ 13-4 (4)] witness but which, in fact, was not, or disclose the truth; and, to me, I was duty bound as an officer of the court to file the disclosure in accordance with the facts as I knew them at the time we filed them."

The plaintiff then reiterated that when he agreed to disclose Lis and Jacobsen as § 13-4 (4) witnesses, "it was my understanding that these individuals would be the [§ 13-4 (4)] witnesses. Now, if the court today wants us to disclose them as [§ 13-4 (4)] witness[es], understanding that we have no intention of calling them as . . . expert[s] in the case, I will do that. *I am troubled by it. I am uncomfortable with it. . . . If the court so orders, I will file a disclosure of [Lis and Jacobsen] under [§ 13-4 (4)] having put on the record that we do not, in fact, intend to call them as expert witnesses.* . . . [T]he problem that I was faced with was I was being asked to disclose something which I believed to be untrue. Therefore, I made the only disclosure that I thought was fair." (Emphasis added.)

---

[18] We again note that, as the plaintiff maintains, although Judge Teller issued the § 13-4 (4) disclosure order twice in a literal sense, in fact it was really one order: the first, without argument; and the second, an affirmation of the first after argument.

The plaintiff then turned to the question of prejudice and remedy. It stated: "Now, if counsel believes they have been prejudiced by this because, had they known then that the witness would be a [§ 13-4 (2)] witness instead of a [§ 13-4 (4)] witness, perhaps we can find a way to fashion a remedy for whatever they allege arose out of that individual's participating in that deposition. . . . I felt . . . that the disclosure of the [§ 13-4 (4) witness] would be false and misleading . . . and I have to stress to the court [that] I believed then and believe now I have a [§ 13-4 (2)] witness here. And it is regrettable that that change in my understanding and my client's understanding occurred between the time of the deposition . . . and the time that I was compelled to disclose the witness. *But those are the facts, and . . . I'm very uncomfortable with making a disclosure that, factually, is inaccurate merely because it complies with a court order.*" (Emphasis added.)

The court responded: "*I won't force you to disclose. Just force you to allow [Hamilton Standard] to depose these gentlemen.*" (Emphasis added.)

The plaintiff then stated: "That's fine . . . . I don't have a problem with that deposition. I have a problem with being asked to make the disclosure I felt was inappropriate."

Hamilton Standard then recounted the history of the original designation of Lis and Jacobsen as § 13-4 (4) witnesses, the plaintiff's subsequent written disclosure of them as § 13-4 (2) witnesses in November, 1997, and Judge Teller's orders on the defendant's motion to compel, including the $250 fine. Hamilton Standard then argued that the plaintiff "had the benefit of having two individuals, which, now, he says were not experts that will testify at trial to consult with during the deposition; and he did on numerous occasions. . . . He had that benefit, and I allowed him to have that benefit for one

reason: Because he had promised he was going to disclose these experts as [§ 13-4 (4)] and, therefore, I allowed them to stay in the room and take part in which is otherwise a private proceeding. There is no other . . . relief that can satisfy that flagrant misbehavior . . . than to dismiss the action . . . ."

After further colloquy, the court asked Hamilton Standard whether, if the court were not inclined to grant the dismissal, Hamilton Standard could suggest an alternative. Hamilton Standard responded: "Your Honor, the alternative, given your posture on dismissal of this action, would be to have [plaintiff's counsel] file a [§ 13-4 (4)] disclosure within a week; have him pay for the cost of the expert for their attendance and for the deposition and to have [the plaintiff's] law firm, since you don't want to penalize the party, pay for the costs involved with my time arguing today and the preparation of the motion for judgment of dismissal."

The plaintiff responded by denying any bad faith or inappropriate conduct, repeating that when "it was time to deal with the motion to compel disclosure, I could not, as I read my duty to the court, make a [§ 13-4 (4)] disclosure; and I believe that it would be inappropriate to levy, in essence, a fine against a lawyer who felt that he was duty bound to make a disclosure that a lawyer believed was accurate. . . . I believed at the time that I filed the [§ 13-4 (2)] disclosure and I believe today that that was the only appropriate disclosure."

At that point the plaintiff stated: "If the court believes that, in some manner, Hamilton Standard has been prejudiced because they haven't had an opportunity to understand what it is, if anything, that these individuals gained from that deposition, *I think that the more practical resolution is to have them take the deposition of our [§ 13-4 (2)] witness. If they take the deposition of our [§ 13-4 (2)] witness, they'll learn whatever it*

*is that they believe will be helpful to their case. They'll
avoid any prejudice.* They'll be no worse off than if
the [§ 13-4 (4)] disclosure that they think should have
been made was made and, yet, we will ultimately have
served not only the letter but the intent of our rules."
(Emphasis added.)

The court then entered its conditional order of dismissal. It responded to the plaintiff: *"Right. But for
violation of Judge Teller's two orders to disclose [Lis
and Jacobsen] as experts and for two agreements on
the record with [Hamilton Standard's counsel], a judgment of dismissal will enter unless, within one week,
plaintiff files [a § 13-4 (4)] disclosure as to [Lis and
Jacobsen]; makes them available within a reasonable
time for deposition; pays their . . . witness fees at
the deposition and pays $250 to [Hamilton Standard's
counsel] for its time associated with this matter."*
(Emphasis added.)

Several factors stand out from this colloquy. First, the
plaintiff adequately explained to the court the confusing
history of the disclosures regarding Lis and Jacobsen,
and adequately explained their current status, not as
experts governed by subsection (4) of § 13-4, but by
subsection (2). The plaintiff pointed out that when
Judge Teller's orders had been entered, it was the plaintiff's intention to call Lis and Jacobsen as testifying
experts, but that this intention had changed by the time
of the plaintiff's November, 1997 formal disclosure of
them as nontestifying experts. In this connection, the
plaintiff made clear that it now regarded them as
experts the disclosure of whose opinions were governed, not by subsection (4) of § 13-4, but by subsection
(2). Given that the plaintiff had made this fact known
to the defendants since its November, 1997 disclosure,
it is difficult for us to disagree with that characterization
of their status. Further, it is clear that, when the plaintiff
used the term "§ 13-4 (4) witness," it meant an expert

whom the plaintiff intended to call as a testifying witness—a label that no longer aptly applied to Lis and Jacobsen. Further, in this connection, the plaintiff explained what it felt was its dilemma in disclosing them as "§ 13-4 (4) witnesses": it would be required to state on the record that they were expected to *testify at trial* to certain facts and opinions when, in fact, there was no such expectation. Hence, it had, as ordered by Judge Teller, formally disclosed them under § 13-4 (4) but with the clear statement that they were in fact not expected to testify at trial.

Second, shortly before the end of the hearing, the court appeared to agree with the plaintiff's position regarding its expressed dilemma, and with the plaintiff's proposed solution to the dilemma, namely, to have the defendants take the deposition of Lis and Jacobsen in order to secure directly from them what they had gained from their attendance at the deposition and had disclosed to the plaintiff. The plaintiff expressed its discomfort at disclosing them as experts under § 13-4 (4) given its continuing belief that they were now in fact experts under § 13-4 (2), but it also stated that "if the court today wants us to disclose them as [§ 13-4 (4) witnesses], *understanding that we have no intention of calling them as . . . expert[s] in the case, I will do that. I am troubled by it. . . . If the court so orders, I will file a disclosure of [Lis and Jacobsen] under [§ 13-4 (4)] having put on the record that we do not, in fact, intend to call them as expert witnesses."* (Emphasis added.) The plaintiff then stated: "[I]f counsel believes they have been prejudiced by [the presence of Lis and Jacobsen at the deposition] because, had they known then that the witness would be a [§ 13-4 (2)] witness instead of a [§ 13-4 (4)] witness, perhaps we can find a way to fashion a remedy for whatever they allege arose out of that individual's participating in that deposition." The plaintiff then repeated its dis-

comfort at being required to disclose them under § 13-4 (4) when, in fact, they were no longer governed by that section, and that to disclose them as testifying witnesses would be inaccurate.

The court responded: *"I won't force you to disclose. Just force you to allow [Hamilton Standard] to depose these gentlemen."* (Emphasis added.) The plaintiff replied: "That's fine . . . . I don't have a problem with that deposition. I have a problem with being asked to make the disclosure I felt was inappropriate."

Third, after this last colloquy, Hamilton Standard repeatedly referred to Lis and Jacobsen in the shorthand reference as "§ 13-4 (4) experts." Hamilton Standard did not, however, explain that, by using that shorthand reference, it in fact meant that, despite the fact that they were not expected to testify at trial, the plaintiff was to be required to state the opinions, not that they would give at trial, but that they had communicated to the plaintiff. Hamilton Standard contended that, because the plaintiff had had the benefit of their presence at the deposition based on its promise to disclose them as "§ 13-4 (4) experts," only dismissal of the action was justified. After the court indicated that it was not inclined to dismiss the action to the prejudice of the plaintiff because of the action of its counsel, Hamilton Standard offered an alternative remedy, namely, "to have [plaintiff's counsel] file a [§ 13-4 (4)] disclosure within a week," and to have the plaintiff's attorney pay for the costs of the depositions, presumably of Lis and Jacobsen, and for Hamilton Standard's counsel fees for the dismissal proceedings.

Fourth, at no time did the defendants contradict the plaintiff's description of the witnesses as witnesses who were *no longer* expected to testify at trial and, therefore, governed by subsection (2) of § 13-4, not by subsection (4). Instead, the defendants insisted that, because the

plaintiff initially had designated them under § 13-4 (4) and thereby gained their presence at the depositions, they must continue to be disclosed as "§ 13-4 (4) experts" or as "§ 13-4 (4) witnesses." Although the plaintiff suggested a remedy appropriate to § 13-4 (2), namely, the taking of their deposition so that the defendants could determine what they had learned by their presence at Ryan's deposition and, presumably, what advantage the plaintiff may have gained as a result, the defendants eschewed any treatment of Lis and Jacobsen under § 13-4 (2).

Fifth, at no time did the defendants claim that they would be prejudiced in having to take the depositions of Lis and Jacobsen without first having received in writing from the plaintiff a statement of the substance of the opinions that they may have given to the plaintiff or the substance of what they may have learned at Ryan's deposition. Although Anything Printed pointed to such potential prejudice in oral argument before this court, and although such a claim may have uncovered the true meaning of the defendants' shorthand reference, it formed no part of the colloquy in the trial court leading to the ultimate dismissal.

Sixth, the court adopted the defendant's shorthand reference for the status of Lis and Jacobsen as "§ 13-4 (4) experts," but without explaining precisely what it meant by that reference. In addition, the court appeared to agree with the plaintiff's proposed solution to its dilemma, namely, to order the plaintiff to make Lis and Jacobsen available for a deposition at the plaintiff's expense. Plaintiff's counsel responded to Hamilton Standard's alternative proposal to dismissal by contesting the assertion that counsel should be held personally liable. The plaintiff then suggested what it characterized as "the more practical resolution," namely, "to have [the defendants] take the deposition of our [§ 13-4 (2)] witness. If they take the deposition

of our [§ 13-4 (2)] witness, they'll learn whatever it is that they believe will be helpful to their case. They'll avoid any prejudice. They'll be no worse off than if the [§ 13-4 (4)] disclosure that they think should have been made was made and, yet, we will ultimately have served not only the letter but the intent of our rules."

The court responded: *"Right. But for violation of Judge Teller's two orders to disclose [Lis and Jacobsen] as experts and for two agreements on the record with [Hamilton Standard's counsel], a judgment of dismissal will enter unless, within one week, plaintiff files [a § 13-4 (4)] disclosure as to [Lis and Jacobsen]; makes them available within a reasonable time for deposition; pays their . . . witness fees at the deposition and pays $250 to [Hamilton Standard's counsel] for its time associated with this matter."* (Emphasis added.)

This response by the court is significant in several respects. The initial response of *"[r]ight" appears* to indicate the court's agreement with the suggestion of the plaintiff that immediately preceded it, namely, that the appropriate remedy was to have the defendants take the depositions of Lis and Jacobsen. (Emphasis added.) This also was consistent with the court's earlier statement to the plaintiff that it would not "force [the plaintiff] to disclose. Just force you to allow [Hamilton Standard] to depose these gentlemen." At the least, this apparent agreement and consistency laid a reasonable and plausible basis for the plaintiff's interpretation of the court's order. In addition, the court did not accede to Hamilton Standard's contention that the plaintiff's counsel, rather than the plaintiff itself, be charged with the expenses of the proceedings and of the anticipated deposition. Instead, the court ordered that "the plaintiff" pay those expenses. Furthermore, the court, as indicated previously, simply used the shorthand reference of a "§ 13-4 (4) disclosure" without making it clear

that it meant to embody the defendants' intended meaning of that phrase and without clearly disabusing the plaintiff of what it repeatedly had suggested it understood that to mean in this context.

Finally, the court's oral order was quite specific. It ordered that a judgment of dismissal would enter unless the plaintiff: (1) filed a "[§ 13-4 (4)] disclosure as to [Lis and Jacobsen]," but without a clarification of what it meant by a "§ 13-4 (4) disclosure"; (2) made them available for deposition at its own expense; and (3) paid Hamilton Standard's counsel $250 for its time associated with the dismissal matter.[19] The court's order was not reduced to writing.

On September 18, 1998, the plaintiff filed the following "Disclosure of David Lis and Gar[r]y Jacobs[e]n As Experts": "Pursuant to the Court's order of September 14, 1998, the Plaintiff . . . hereby discloses David Lis and Gar[r]y Jacobs[e]n as expert witnesses pursuant to Practice Book Section 13-4 (4) (formerly known as [§] 220 [D]). For the reasons set forth on the record of the hearing on September 14, 1998, the undersigned respectfully submits that at this time, as on November 13, 1997, there is not a current intent to call either of these individuals as expert witnesses at trial." Hamilton Standard objected to this disclosure and renewed its motion for judgment of dismissal.

The renewed motion was heard by the court on October 26, 1998. The only issue before the court was whether the plaintiff had complied with the first part of its three part conditional order of dismissal, namely, that the plaintiff file a "[§ 13-4 (4)] disclosure as to [Lis and Jacobsen]."

---

[19] The record is clear that neither the second nor third conditions formed any part of the basis of the ultimate dismissal rendered at the October 26, 1998 hearing.

The court began by stating: "As I understand it, Judge Teller, in 1997, ordered a [§ 13-4 (4)] disclosure of [Lis and Jacobsen] twice—granted Hamilton Standard's motion to compel that information twice. It was not complied with. Hamilton Standard, then, came before me, renewing the motion. I had ordered that the disclosure be filed by . . . September 15th of 1998 and, in addition, that the plaintiff make [Lis and Jacobsen] available to be deposed. I see where a document, which is, certainly, not a [§ 13-4 (4)] disclosure, was filed. The document, basically, restated their names and gave no other information. I consider that to be outrageous and the equivalent of a thumbing your nose at the court's order or worse. Obviously, [Hamilton Standard's counsel] did not spend all his time and Hamilton Standard's money trying to get that which he already knew—that [Lis and Jacobsen] had, at one time, been thought to be expert witnesses for [the plaintiff]. . . . [I]f there is an explanation for this, I'd like to hear it. Short of that, I think that we are at a serious enough situation where the dismissal of this case is warranted by [the conduct of plaintiff's counsel]."

The plaintiff responded: "At the hearing on September 14th, you may recall there was discussion of whether or not these were [§ 13-4 (2)] or [§ 13-4 (4)] witnesses and I tried to explain to the court that these really were not [§ 13-4 (4)] witnesses and the court clearly felt that, under the circumstances of the case . . . you wanted me to make a [§ 13-4 (4)] disclosure so that those depositions could proceed. The record demonstrates, immediately, we disclosed these individuals as [§ 13-4 (4)] witnesses so [Hamilton Standard] can proceed to take the depositions."

The court then asked: "And does not [§ 13-4 (4)] require you to state the subject matter on which the expert will testify, the substance of facts and opinions to which the expert is expected to testify and a summary

of . . . [the] grounds of each opinion? . . . And that was not in your disclosure."

The plaintiff responded: "No, Your Honor . . . unfortunately there is no . . . transcript yet from the September [14th] proceedings . . . . [W]e've been trying to get that and it's another issue because I'm here today being asked to respond to what was done on September 14th and, yet, I still do not have a transcript of those proceedings."[20]

The court stated: *"We all remember what happened, at least with respect to this issue . . . ."* (Emphasis added.) The plaintiff responded: "Yes, Your Honor and I think we all remember that I advised the court there will be no testimony from these individuals."

The court then stated: *"And I advised you that, at this point, given the history of this issue, that was not relevant. . . . [W]hatever opinion they had given to you was, now, fair game for [Hamilton Standard] and I was ordering you to disclose it."* (Emphasis added.) The court then ascertained that the plaintiff had made Lis and Jacobsen available to be deposed, as had been ordered.

The court then asked the plaintiff: "[B]ut you have not given . . . the substance of their opinions?" The plaintiff responded that it had "not given the substance of their testimony because they will not testify. . . . I feel that we . . . have been placed in by the court's order . . . an impossible position. We are being asked by the court to disclose the testimony of individuals who are not going to testify; and if the court feels that under that circumstance you have to dismiss the case, I don't know what else I can say. They're not going to

---

[20] It is undisputed that the plaintiff unsuccessfully had sought to secure a transcript of the September 14, 1998 hearing for use at the October 26, 1998 hearing.

testify. I've advised the court they're not going to testify."

The court then stated: "And the court wanted—and given your history with these two gentlemen—the court believes that, although normally . . . the opposing party is not entitled to the opinions of experts consulted but not expected [to testify at] trial, since you've already disclosed that these are experts—since [Hamilton Standard] allowed you to . . . have these gentlemen remain at a deposition based expressly on your representation that they were experts, *that whatever opinions they have given to you—whether or not they will testify—need to be disclosed. That was not done and, clearly, that was what was being sought.*" (Emphasis added.)

The plaintiff stated that "with due respect *and I don't have the transcript from the 14th*—so I cannot say today with certainty the exact language used, but it was my understanding that what was sought was a [§ 13-4 (4)] disclosure so that depositions could be taken . . . ." (Emphasis added.) The court responded: "Everyone knew their names already. You'd already done that. *Obviously* . . . *Hamilton Standard was seeking their opinions, which you don't seem to want to disclose, even though, now, you've been ordered three times by judges to do so.*" (Emphasis added.) After a further brief colloquy, the court dismissed the action.[21]

Several factors stand out from this colloquy. The court was of the definite opinion that, in the September 14, 1998 hearing, it had made clear to the plaintiff that,

---

[21] On November 12, 1998, the plaintiff moved for reargument and reconsideration of the defendants' motion to dismiss. At that point, the plaintiff still had been unable to secure a transcript of the September 14, 1998 hearing, and notified the court of that fact in the motion. In the motion, the plaintiff essentially reasserted its positions as stated in the October 26, 1998 hearing. The court denied this motion on the same day, as follows: "Denied. Plaintiff should not move to reargue again."

despite the plaintiff's stated intention *not* to call Lis and Jacobsen as witnesses, the opinions that they had given to the plaintiff were to be disclosed to the defendants. In effect, the court was of the opinion that, at that prior hearing, it had made clear to the plaintiff its understanding of what it had meant by the shorthand reference of a "§ 13-4 (4) disclosure," namely, that although they were in fact now experts whose opinions were governed by § 13-4 (2), their opinions were to be given to the plaintiffs *as if* they were in fact witnesses who would testify and, therefore, were governed by § 13-4 (4). As the transcript of the September 14, 1998 hearing indicates, however, that meaning had not been clearly indicated to the plaintiff. Furthermore, this certainty of the trial court was based, not on a transcript of what had occurred on September 14, 1998, but on the court's recollection thereof approximately six weeks later. Finally, it was not until the October 26, 1998 hearing that the defendants' and the court's intended meaning of the shorthand reference to a "§ 13-4 (4) disclosure" was revealed, and that was done without reference to the transcript of the prior proceeding at which its crucial use was made.

We do not suggest that the court was without power to have ordered the plaintiff to make the opinions of Lis and Jacobsen available to the defendants before their depositions, despite their then nontestimonial status. Moreover, we do not suggest that either the defendants' or the court's intended meaning of the shorthand reference employed by them was implausible.

Indeed, had that intended meaning been made reasonably clear at the September 14, 1998 hearing, the trial court's implicit finding, namely, that the plaintiff's violation of its order was a deliberate and unwarranted disregard of the court's authority, would have been fully justified. We do conclude, however, that the intended meaning of that shorthand reference was not conveyed

with reasonable clarity to the plaintiff until it was too late for the plaintiff to comply with it. Absent that level of clarity, the court's finding was flawed.

We acknowledge that the trial court imposed three separate conditions, the first of which was the filing of a "[§ 13-4 (4)] disclosure as to [Lis and Jacobsen]," and the second of which was to make them available for deposition. We also acknowledge that the difference between the first and second conditions undermines the plaintiff's contention that it thought that the gist of the court's order was simply to make Lis and Jacobsen available for deposition. Although that difference may have detracted from the ambiguity of the shorthand reference to Lis and Jacobsen as "§ 13-4 (4) experts," it did not dispel that ambiguity. The court's order of conditional dismissal was immediately preceded by the court's response of "[r]ight" to the plaintiff's suggestion that any prejudice suffered by the defendants could be resolved by deposing Lis and Jacobsen, and was plausibly heard by the plaintiff as consistent with the court's earlier statement that it would not "force [the plaintiff] to disclose. Just force you to allow [Hamilton Standard] to depose" them. The fact remains that, although the plaintiff *might* have inferred what the court meant by the shorthand reference, this possibility is simply insufficient to justify a conclusion, based on this record and considering the repeated assertions of the plaintiff regarding its understanding of the court's order, that the plaintiff nonetheless did apprehend the intended meaning of the trial court.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion NORCOTT, KATZ and PALMER, Js., concurred.

VERTEFEUILLE, J., concurring in part and dissenting in part. I am disturbed by the majority's willingness to

reverse the trial court's exercise of its discretion in the important matter of imposing sanctions for a violation of trial court orders. I therefore respectfully dissent.

I agree with part I of the majority opinion that the trial court has the authority to impose sanctions against an attorney pursuant to its inherent power and, additionally, the Connecticut rules of practice, namely, Practice Book § 13-14.[1] I also agree with part II of the majority opinion that the trial court, *Aurigemma, J.*, in light of its finding that the plaintiff, Millbrook Owners Association, Inc., had not complied with three orders of the court, could properly dismiss the plaintiff's action under either its inherent power or § 13-14. Although I concur with the majority's modified standard of review with respect to the trial court's imposition of sanctions in this case, I depart from the majority because of the

---

[1] Practice Book § 13-14 provides in relevant part: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead . . . or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

I note, as did the majority in footnote 4 of its opinion, that at the time of the proceedings in this action, an earlier revision of the Practice Book with a different numbering system was applicable. For purposes of clarity, references herein are to the current revision and codification of the rules of practice.

conclusion reached in part III of its opinion that, although the trial court had the authority to do so, the court improperly dismissed the plaintiff's action because its conditional order of dismissal had not been conveyed to the plaintiff with "reasonable clarity."

An order of the court must be sufficiently clear and specific to allow a party to determine with reasonable certainty what it is required to do. See *Dept. of Health Services* v. *Commission on Human Rights & Opportunities*, 198 Conn. 479, 488–89, 503 A.2d 1151 (1986); *Adams* v. *Vaill*, 158 Conn. 478, 485–86, 262 A.2d 169 (1969); *Castonguay* v. *Plourde*, 46 Conn. App. 251, 268, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997); *Contegni* v. *Payne*, 18 Conn. App. 47, 59, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989); *Dingwell* v. *Litchfield*, 4 Conn. App. 621, 625, 496 A.2d 213 (1985). Contrary to the majority, I conclude that Judge Aurigemma's order was sufficiently clear for the plaintiff to have understood what the trial court had ordered it to do and that plaintiff's counsel in fact understood the order. I further conclude that the trial court did not abuse its discretion in dismissing the plaintiff's action for noncompliance with the order.

I begin by pointing out that the plaintiff did not clearly articulate in its brief a claim that the trial court's order was not reasonably clear. Such a claim is not set forth in the plaintiff's statement of the issues on appeal nor in the section headings or subheadings in the argument section of its brief. The only reference I find to such a claim is an isolated statement that the trial court's reference to Practice Book § 13-4 (4) "did not provide sufficient notice to [the plaintiff] that it should summarize nonexistent testimony in its § 13-4 (4) disclosure." No argument is developed in support of that single statement. Ordinarily, "[c]laimed errors not adequately briefed and not fully developed will not be considered by this court. See Practice Book § [67-4]; *Liscio* v. *Lis-*

*cio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987); *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 496, 208 A.2d 748 (1965). *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991). We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.,* 218 Conn. 297, 300, 589 A.2d 337 (1991); *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 170–71, 510 A.2d 440 (1986)." (Internal quotation marks omitted.) *Drabik* v. *East Lyme,* 234 Conn. 390, 400, 662 A.2d 118 (1995); see *Butler* v. *Hartford Technical Institute, Inc.,* 243 Conn. 454, 465 n.11, 704 A.2d 222 (1997). Even if we were to assume that such a claim was properly before us, I would conclude that the trial court's order was reasonably clear.

As set forth in the majority opinion, Judge Aurigemma held two hearings with respect to the motion for judgment of dismissal[2] filed by the named defendant, Hamilton Standard, the first on September 14, 1998, and the second on October 26, 1998. Prior to the hearing on

[2] Hamilton Standard's motion for judgment of dismissal, filed May 6, 1998, provides in relevant part: "Pursuant to Practice Book § [13-14 (b) (4)], defendant Hamilton Standard respectfully moves this Court to enter a judgment of dismissal based upon [the] plaintiff's flagrant violation of the Court's Order dated November 3, 1997 (*Teller, J.*), which compelled [the] plaintiff to formally disclose David Lis and Garry Jacobs[e]n as Practice Book § [13-4 (4)] expert witnesses by December 3, 1997. [The] [p]laintiff has also breached an agreement with Hamilton Standard that Mr. Lis and Mr. Jacobs[e]n would be disclosed as expert witnesses pursuant to Practice Book § [13-4 (4)], effectively prohibiting Hamilton Standard from conducting the necessary discovery to defend this case. [The] [p]laintiff attempts [to] justif[y] its disregard of this Court's Order by making the specious claim that Mr. Lis and Mr. Jacobs[e]n are non-testifying consultants pursuant to Practice Book § [13-4 (2)]. [The] [p]laintiff only made this claim, however, after the Court ordered [the] plaintiff to disclose its experts pursuant to Practice Book § [13-4 (4)].

"By flouting this Court's Order, [the] plaintiff has shown complete disregard for the Court's authority, abused the discovery process, and prejudiced Hamilton Standard. Accordingly, a judgment of dismissal should enter."

September 14, 1998, Judge Teller had ordered the plaintiff on September 29, 1997, and again on November 3, 1997, to disclose David Lis and Garry Jacobsen as its experts under Practice Book § 13-4 (4). The plaintiff had not complied with these orders. Instead, the plaintiff had disclosed Lis and Jacobsen as experts under § 13-4 (2)[3] in light of its decision not to use Lis and Jacobsen as experts at trial. The § 13-4 (2) disclosure did not disclose the opinions held by Lis and Jacobsen, or the basis for those opinions, disclosures that are required under § 13-4 (4).

At the hearing on September 14, 1998, plaintiff's counsel explained to the court that after Lis and Jacobsen

---

[3] The plaintiff's disclosure of Lis and Jacobsen, filed November 17, 1997, provided in relevant part: "Pursuant to this Court's order of November [3], 1997, and Practice Book [§ 13-4 (4)] [the plaintiff] hereby makes the following disclosure:

"1. [The plaintiff] has retained Apex Environmental, Inc. ('Apex Environmental'), to review and provide expert analysis of environmental reports submitted by the Consultants retained by the [d]efendant Hamilton Standard . . . with regard to Consent Order #069 between Hamilton Standard and the Connecticut Department of Environmental Protection (the 'Consent Order').

"2. The expert analysis of Apex [E]nvironmental was deemed necessary and desirable to assist the board members of the [plaintiff] in making informed decisions with regard to the Consent Order and to further assist the [plaintiff] by providing comments on its behalf to the [department of environmental protection].

"3. Mr. Lis and Mr. Jacobs[e]n have assisted in the analysis of information submitted by consultants to the defendant Hamilton Standard which does [relate] to the instant case, however [the plaintiff] has no present expectation of calling either of these men as an expert witness at the trial in this case.

"4. Based upon the foregoing, Mr. Lis and Mr. Jacobs[e]n are experts for the plaintiff only as defined by Practice Book [§ 13-4 (2)].

"5. The pleadings have not been closed, no trial date has been set and no final determination has been made by the [p]laintiff as to which, if any, experts will be called to testify at the trial of the above captioned case.

"6. The plaintiff is still awaiting production of documents, first requested in April of this year, from Hamilton Standard . . . . Further, [the plaintiff] is still awaiting dates for depositions of key witnesses who are employees of Hamilton Standard . . . .

"7. The information disclosed by Hamilton Standard . . . may form all or part of the factual basis for expert opinions."

had attended the depositions held on July 22, 1997, and August 15, 1997, respectively, based on the plaintiff's representation that they would be testifying at trial as the plaintiff's experts, the plaintiff had decided that it would not be calling them as expert witnesses at trial. Plaintiff's counsel then stated: *"Now, if the court today wants us to disclose [Lis and Jacobsen] as . . . [§ 13-4 (4)] witness[es], understanding that we have no intention of calling them as . . . expert[s] in the case, I will do that. I am troubled by it. I am uncomfortable with it. . . . If the court so orders, I will file a disclosure of [Lis and Jacobsen] under [§ 13-4 (4)] having put on the record that we do not, in fact, intend to call them as expert witnesses."* (Emphasis added.)

This statement clearly demonstrates that plaintiff's counsel understood that the court was contemplating ordering the plaintiff to disclose Lis and Jacobsen as if they were experts who were going to testify at trial pursuant to § 13-4 (4), despite the fact that the plaintiff no longer intended to call them as witnesses at trial. At the end of the hearing, the trial court entered just such an order: "But for violation of Judge Teller's two orders to disclose [Lis and Jacobsen] as experts and for two agreements on the record with [Hamilton Standard], *a judgment of dismissal will enter unless, within one week, [the] plaintiff: files [a § 13-4 (4)] disclosure as to [Lis and Jacobsen]*; makes [Lis and Jacobsen] available within a reasonable time for deposition; pays [Lis and Jacobsen's] . . . witness fees at the deposition and pays $250 to [Hamilton Standard] for its time associated with this matter." (Emphasis added.) The trial court's order was reasonably clear: disclosure was to be made pursuant to § 13-4 (4), the terms of which are clearly set forth in the rules of practice, within one week or the action was to be dismissed.[4]

[4] In accordance with our view of the sanction of dismissal as a last resort for trial courts; see *Fox* v. *First Bank*, 198 Conn. 34, 39, 501 A.2d 747 (1985); Judge Aurigemma was reluctant to penalize the plaintiff for its counsel's

The terms of Practice Book § 13-4 (4) specifically require disclosure of "the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion . . . ." On September 15, 1998, the day following the trial court's order, the plaintiff filed a disclosure which purported to be a § 13-4 (4) disclosure. The disclosure failed, however, to set forth the very heart of the disclosures required under § 13-4 (4), e.g., the substance of the experts' opinion testimony, together with the basis for their opinions. The plaintiff's disclosure set forth only the full names of Lis and Jacobsen, which were already known by Hamilton Standard, and contained a statement that the plaintiff did not intend to call them at trial, a fact also already known by Hamilton Standard and the court.

On October 26, 1998, at the second hearing on Hamilton Standard's motion for judgment of dismissal, the plaintiff's counsel again demonstrated that he understood the terms of the conditional order of dismissal. At the outset of the hearing, the trial court recounted the history relating to the conditional order of dismissal: "As I understand it, Judge Teller, in 1997, ordered a [§ 13-4 (4)] disclosure of [Lis and Jacobsen] twice . . . . It was not complied with. Hamilton Standard, then, came before me, renewing the motion. I had ordered that the disclosure be filed by . . . [September 21, 1998] and, in addition, that the [plaintiff] make [Lis and Jacobsen] available [to Hamilton Standard] to be deposed. I see where a document, which is, certainly, not a [§ 13-4 (4)] disclosure, was filed. The document, basically, restated [Lis and Jacobsen's] names and gave no other information. I consider that to be outrageous and the equivalent of . . . thumbing your nose at the

actions. The court's conditional order of dismissal, which allowed the defendant one week to comply with its conditions, demonstrates this reluctance.

court's order or worse. Obviously, [Hamilton Standard] did not spend all [its] time and [its] money trying to get that which [it] already knew . . . ." Next the trial court asked plaintiff's counsel whether there was an explanation for his failure to file a § 13-4 (4) disclosure. The following colloquy ensued:

"[Plaintiff's Counsel]: . . . At the hearing on September 14th, you may recall there was discussion of whether or not these were [§ 13-4 (2)] or [§ 13-4 (4)] witnesses and I tried to explain to the court that these really were not [§ 13-4 (4)] witnesses and *the court clearly felt that, under the circumstances of the case, that you wanted me to make a [§ 13-4 (4)] disclosure so that those depositions could proceed.* . . .

"The Court: Do you know what a [§ 13-4 (4)] disclosure is? Have you read the section?

"[Plaintiff's Counsel]: Your Honor, I have read the section.

"The Court: And does it not require you to state the subject matter on which the expert will testify, the substance of facts and opinions to which the expert is expected to testify and a summary of—of grounds of each opinion?

"[Plaintiff's Counsel]: Yes, Your Honor.

"The Court: And that was not in your disclosure.

"[Plaintiff's Counsel]: No, Your Honor . . . ." (Emphasis added.)

Plaintiff's counsel further responded that he thought that the court ordered a § 13-4 (4) disclosure in order for Hamilton Standard to proceed with the depositions of Lis and Jacobsen and again argued, as he had several times before, that he did not think a § 13-4 (4) disclosure was proper because of his decision not to use Lis and Jacobsen as experts at trial. The court then reiterated

the reasoning and terms of its conditional order of dismissal. "And I advised you that, at this point, given the history of this issue, that [the current status of Lis and Jacobsen] was not relevant. . . . *[W]hatever opinion they had given to you was, now, fair game for [Hamilton Standard] and I was ordering you to disclose it.*" (Emphasis added.)

Yet again, plaintiff's counsel responded that a § 13-4 (4) disclosure, which had already been ordered by the court, was inappropriate in light of the decision that Lis and Jacobsen would not testify at trial. He stated: "I have not given the substance of their testimony because they will not testify. . . . Your Honor, I feel that we are in—and we have been placed in by the court's order—an impossible position.

*"We are being asked by the court to disclose the testimony of individuals who are not going to testify; and if the court feels that under that circumstance you have to dismiss the case, I don't know what else I can say.* They're not going to testify. I've advised the court they're not going to testify." (Emphasis added.)

Faced with the severe sanction of dismissal of his client's complaint, plaintiff's counsel intractably reiterated an argument already rejected several times previously by the court. The trial court then reasonably explained: "[A]lthough normally . . . the opposing party is not entitled to the opinions of experts consulted but not expected [to testify at] trial, since you've already disclosed that [Lis and Jacobsen] are experts—[and] since [Hamilton Standard] has allowed [Lis and Jacobsen] to . . . remain at a deposition based expressly on your representation that [Lis and Jacobsen] were experts, [then] *whatever opinions they have given to you—whether or not they will testify—need to be disclosed.* That was not done and, clearly, that was what was being sought. . . . Why would [Hamilton Stan-

dard] need [Lis and Jacobsen's] names when [it] already has their names and why would [it] need you to file a piece of paper . . . with their names in it, when I already ordered you to make [Lis and Jacobsen] available for deposition? I don't understand your thinking. Those were two separate things—you were to disclose their opinions—their names, everybody already had." (Emphasis added.)

Given a last opportunity to explain, plaintiff's counsel stated: "Your Honor, I—it seems to me the court may be under the impression that there is a specific opinion that has been—I—frankly, I'm at a loss.

"I—my understanding was that the reason that the [§ 13-4 (4)] disclosure was—disclosure was wanted was because there are different mechanisms and standards for how much information the parties can get to. My expectation was the [Hamilton Standard's counsel] wanted to take depositions—that if there were issues as to where we were going on discovery, he wanted to have the latitude that a [§ 13-4 (4)] would permit him in terms of the breadth of where he was going." After hearing from counsel for Hamilton Standard, the court ordered the action dismissed.

At no time during the October 26, 1998 hearing did plaintiff's counsel claim that he did not understand the terms of the conditional order of dismissal. He complained about not being able to get a transcript of the September 14, 1998 hearing—although he filed his disclosure on September 15, apparently without attempting to obtain a transcript—and he complained about the October 26 hearing being held on short notice. He never contended, however, that he did not know what he needed to do in order to comply with the trial court's order of dismissal.

Moreover, it is clear from the statements of plaintiff's counsel at the hearing on September 14, 1998, and again

on October 26, 1998, as cited previously herein, that he did understand the terms of the court's conditional order of dismissal.[5] The order was not lacking reasonable clarity and was understood by plaintiff's counsel.

I would further conclude that the trial court properly found that the plaintiff violated the court's order of September 14, 1998, to file a § 13-4 (4) disclosure with respect to Lis and Jacobsen.[6] At no time during the October 26, 1998 hearing or at anytime thereafter, did the plaintiff offer to file a disclosure that would satisfy Judge Aurigemma's order. In fact, to date, the plaintiff has never changed its position that it would not disclose Lis and Jacobsen as experts expected to testify pursuant to § 13-4 (4).[7]

I would therefore conclude that the trial court's findings that the plaintiff violated its order of disclosure was not clearly erroneous. It is clear to me that the trial court had no other alternative but to dismiss this action in light of the plaintiff's persistent and intentional refusal to comply with the trial court's orders to disclose Lis and Jacobsen as § 13-4 (4) experts. See *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 144–45, 470 A.2d 246 (1984). "[I]f the disobedient party's refusal to [comply with an order from the trial court] is intentional, if a sufficient need for the information requested

---

[5] Even if we were to assume that plaintiff's counsel failed to comprehend the court order on September 14, 1998, the colloquy between the court and counsel on October 26, 1998, clearly established that he certainly understood what was required for compliance on that day.

[6] I recognize that the majority did not reach this issue because of its conclusion that the court's order was not reasonably clear.

[7] During the plaintiff's oral argument before this court on December 7, 2000, I asked plaintiff's counsel whether the plaintiff at any time subsequent to Judge Aurigemma's order of dismissal on October 26, 1998, moved to open the judgment of dismissal and submit a disclosure of Lis and Jacobsen as experts under § 13-4 (4). Plaintiff's counsel answered my inquiry in the negative. To this very day, therefore, the plaintiff has made no attempt to comply with Judge Aurigemma's order.

is shown by the opposing party, *and if it does not appear that the disobedient party, having failed to comply with the order embodied in the rules, is inclined to change his position, then dismissal is an appropriate sanction.* In such situations dismissal serves not only to penalize those whose conduct warrants such a sanction but also to deter those who might be tempted to such conduct in the absence of such deterrent." (Emphasis added.) Id., 145.

I firmly disagree with the majority's conclusion that the trial court abused its discretion in dismissing the plaintiff's action. In my view, the majority has shown an insufficient degree of deference to the trial court in this case. Where the trial court has imposed sanctions against an attorney for failure to comply with its orders with respect to discovery, we *must* give that decision great deference and indulge every reasonable presumption in favor of its correctness. See, e.g., *Biro* v. *Hill*, 231 Conn. 462, 465, 650 A.2d 541 (1994). The trial court was in the best position to judge the demeanor and attitude of plaintiff's counsel, to interpret and evaluate his explanation for his failure to comply with the orders of the trial court and to decide whether dismissal was an appropriate sanction under all the circumstances. "As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did." Id. Judge Aurigemma reasonably could have concluded that plaintiff's counsel knowingly and intentionally failed to comply with the trial court's orders and that dismissal was an appropriate sanction. Her decision should be affirmed.

Accordingly, I respectfully dissent.