PHILIP FORSTER *v.* GUS GIANOPOULOS ET AL.
(AC 27639)

McLachlan, Harper and Lavine, Js.

Argued September 24, 2007—officially released February 12, 2008

*Stuart B. Ratner*, for the appellants (defendants).

*Patrick J. McHugh*, with whom, on the brief, were *William M. Tong* and *Richard S. Gora*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendants, Gus Gianopoulos and Tom Gianopoulos, appeal from the default judgment rendered by the trial court in favor of the plaintiff, Philip Forster. The judgment followed an order that the defendants disclose certain documents to the plaintiff, with which the court determined the defendants had not complied. The defendants now claim that the court lacked authority to render a default judgment and, alternatively, that the court abused its discretion in rendering a default judgment. We disagree.

The following facts and procedural history are relevant to our disposition of the defendants' appeal. On November 12, 2003, the plaintiff brought an action seeking to collect on a series of allegedly unpaid promissory notes. In connection with this claim, on August 22, 2005, the court granted a prejudgment remedy in favor of the plaintiff in the amount of $1,135,359.91. On August 23, 2005, the court granted the plaintiff's motion for disclosure of assets, which had requested that "each defendant . . . disclose any and all property, real or personal, in which [the] defendants have an interest, jointly or separately, and any and all debts owing to either or both defendants . . . ."

The parties subsequently scheduled a deposition of the defendants for September 29, 2005, and the plaintiff sent the defendants a notice of deposition on September 19, 2005. The defendants failed to attend this deposition.

Upon a failed attempt to reschedule the deposition, the plaintiff filed a motion for sanctions and judgment on October 28, 2005, pursuant to Practice Book § 13-14. On November 14, 2005, the court granted in part and denied in part this motion,[1] ordering that the defendants "submit to examinations by deposition and disclose documents in furtherance of an order to disclose assets by December 15, 2005, or be subject to further sanctions, including entry of judgment."

The defendants appeared at a deposition on December 14, 2005. At the deposition, the defendants, who had earlier pleaded guilty to and were awaiting sentencing for various federal tax and financial crimes, invoked their fifth amendment privilege against self-incrimination in response to the plaintiff's questioning. The defendants also failed to produce any of the documents at issue in the court's November 14, 2005 order.

On December 22, 2005, the plaintiff filed a second motion for sanctions and judgment pursuant to Practice Book § 13-14. The court heard oral argument on the matter on January 23, 2006. At that hearing, the defendants' attorney made the following representation: "[A]t this point, [the defendants] are in the process of preparing a presentence investigation report [report].[2] . . . I can assure Your Honor that it is a complete form . . . . It has every question imaginable on it. And failure to answer accurately is a federal crime in and of itself." The defendants' attorney continued, stating that "[w]e [have offered] to give [the plaintiff] a copy of the [report], which is a thick report, which would have every property owned by [the defendants], however owned, in New York State, in Connecticut, anywhere in the [United States], with documentation, because

---

[1] The court denied, without prejudice, the plaintiff's request for entry of judgment and granted his request for attorney's fees through August 22, 2005.

[2] The report was being prepared in connection with the ongoing, unrelated federal criminal tax and financial prosecution of the defendants.

you have to give them copies of the deeds . . . copies of the bank statements, with actual backup documentation. Whatever is given to the [United States Probation Office], we have offered to give to the [plaintiff]." The court then ordered that "within forty-five days you're going to provide the presentence investigation information to [the plaintiff] . . . ." Upon hearing further oral argument on February 27, 2006, the court imposed a deadline of April 10, 2006, for the defendants to produce the report.

On April 10, 2006, the defendants still had not produced a copy of the report. The defendants' attorney stated at a hearing held the same day that the report had not been provided to him by the defendants and, further, that the individuals who had prepared the report had submitted the only copy available to the United States Probation Office. Nevertheless, the defendants' attorney represented that he had provided to the plaintiff the information contained within the report "to the extent that [he] was able to obtain that information."

The court expressed concern with the fact that the defendants' submission did not include a net worth statement, which the court had understood "would have been part and parcel of any submission that was going to be made." The plaintiff's attorney further pointed out that the submission was "more or less in draft format," that it did not list, as an action pending against the defendants, "this civil action, which has a prejudgment remedy against [the defendants] for over $1 million" and also that the real estate disclosure section did not "[square] with public records . . . ."

Over the defendants' objection, the court thereafter granted the plaintiff's December 22, 2005 motion for additional sanctions and for judgment, and rendered a default judgment in favor of the plaintiff in the amount

of $1,155,359.91.[3] The court explained: "[T]he file is filled with references to prior actions that have been pending against [the defendants]. The lack of cooperation, prior orders of federal courts and this most recent information [regarding the defendants' failure to produce a full copy of the report] indicates to the court that neither [defendant] is cooperating with the discovery order of this court. And furthermore, they're concealing information from their attorneys here in this case. . . . That's why this judgment, which is a very severe judgment and sanction, is being entered, because enough is enough." This appeal followed.

I

The defendants first claim that the court lacked the authority to render a default judgment as a sanction for a violation of a discovery order. In support of this argument, the defendants contend that Practice Book § 13-14 (b) contains an exhaustive list of penalties that may be imposed following a discovery order violation and that although entry of default is one of those enumerated penalties, the simultaneous rendering of judgment is not.[4] We disagree, as the court's authority derives from Practice Book § 17-33 (b).

Practice Book § 17-33 (b) provides in relevant part that "the judicial authority, at or after the time it renders

[3] We note that although the judgment amount differs from that granted via prejudgment remedy, and no explanation for this difference appears in the record, none of the parties has challenged this difference.

[4] Practice Book § 13-14 (a) provides in relevant part that "[i]f any party has . . . failed to respond to requests for production . . . or has failed to comply with a discovery order made pursuant to Section 13-13 . . . or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require."

Practice Book § 13-14 (b) then provides in relevant part: "Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply . . . ."

the default . . . may also render judgment in . . . any contract action where the damages are liquidated, provided the plaintiff has also made motion for judgment and provided further that any necessary affidavits of debt or accounts or statements verified by oath, in proper form, are submitted to the judicial authority." We conclude that the court's rendering of a default judgment was proper, as the dictates of Practice Book § 17-33 (b) had been met by the plaintiff.

The present case is one involving liquidated damages. "When a debtor knows precisely how much he is to pay and to whom he is to pay it, his debt is a liquidated one. . . . An amount claimed to be due is a liquidated sum when it is susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in the possession or knowledge of the party to be charged." (Citation omitted; internal quotation marks omitted.) *Costello* v. *Hartford Institute of Accounting, Inc.*, 193 Conn. 160, 165, 475 A.2d 310 (1984).

The plaintiff's complaint set forth a breach of contract action to collect unpaid principal, interest and penalties on a series of promissory notes. The determination of the total amount due on each promissory note involved a simple mathematical calculation of the outstanding principal balance multiplied by the predetermined interest rate as specified in each note. The court engaged in such a calculation at the prejudgment remedy hearing, determined that amount to be $1,135,359.91, and subsequently informed the defendants of that precise amount.[5] On appeal, the defendants do not claim that this amount was incorrectly calculated; instead, they argue only that the "court lacked the authority to grant

---

[5] We note that the calculation of damages generally occurs at a hearing in damages, held after the entry of a default but prior to the rendition of judgment.

judgment (not default) against the defendants for an alleged discovery violation."[6] As the dictates of Practice Book § 17-33 (b) have been met, we must disagree with the defendants. The court was within its authority to render judgment at the same time as the entry of default.

II

The defendants next claim that, regardless of the court's authority to impose a default judgment, the court's rendition of a default judgment amounted to an abuse of discretion. We disagree.

"In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001). Application of these principles leads us to conclude that the court was within its discretion to render a default judgment.

---

[6] We also note that the plaintiff, on December 22, 2005, submitted a motion, supported by affidavit, for judgment for failure to comply with court-ordered discovery.

On January 23, 2006, the court issued the following order to be complied with: "within forty-five days you're going to provide the presentence investigation information to [the plaintiff] . . . ."[7] The defendants have not contested the clarity of this order on appeal. Nevertheless, we find that this order was abundantly clear and could not have been misunderstood, given the colloquy between the court and the defendants' attorney at the hearing on January 23, 2006. It is apparent to this court that the defendants' attorney thoroughly understood the subject of the court's order as he had anteriorly explained the contents of the report to the court in great detail at that hearing.

We cannot conclude that the court improperly determined that this January 23, 2006 order was in fact violated by the defendants. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 216–17, 932 A.2d 401 (2007).

It is uncontested that the defendants failed to provide a copy of the report to the plaintiff and, thus, violated the January 23, 2006 order. Instead, the defendants' attorney provided the information contained within the

---

[7] The court later granted an extension to April 10, 2006.

report "to the extent that [he] was able to obtain that information," and the defendants now argue that the information as provided was in substantial compliance with the January 23, 2006 order. Even if substantial compliance were adequate to satisfy the requirements of *Millbrook Owners Assn., Inc.*,[8] however, we cannot conclude that the submission was even in substantial compliance with the January 23, 2006 order.

On the basis of the express representation of the defendants' attorney, compliance with the January 23, 2006 order contemplated disclosure of "a thick report, which would have every property owned by [the defendants], however owned, in New York State, in Connecticut, anywhere in the [United States], with documentation, because you have to give [the United States Probation Office] copies of the deeds . . . copies of the bank statements, with actual backup documentation." Although that which was produced did include a listing of securities, real estate, personal property and bank accounts owned by the defendants, supporting documentation was wholly lacking. The court also was quick to recognize that the submission did not include a net worth statement, which the court had viewed as a noteworthy portion of the January 23, 2006 order. Further, the court considered the representation of the plaintiff's attorney that the defendants had not disclosed all outstanding civil actions pending against them and also had failed to include real estate holdings accurately as reflected in municipal land records. In light of the foregoing, we conclude that it was not clear error on the part of the court to have found that the defendants had failed to comply with its January 23, 2006 order.

---

[8] The defendants provide us with no authority to suggest that substantial compliance with a discovery order would satisfy the requirements of *Millbrook Owners Assn., Inc.*

The issue of whether the court's rendition of a default judgment was proportional to the defendants' violation presents a more difficult question. In determining the proportionality of a sanction to a violation, we have in the past considered the severity of the sanction imposed and the materiality of the evidence sought; *Message Center Management, Inc.* v. *Shell Oil Products Co.*, 85 Conn. App. 401, 412, 857 A.2d 936 (2004); whether the violation was inadvertent or wilful; *McVerry* v. *Charash*, 96 Conn. App. 589, 598, 901 A.2d 69, cert. denied, 280 Conn. 934, 909 A.2d 961 (2006); see *Blinkoff* v. *O & G Industries, Inc.*, 89 Conn. App. 251, 259, 873 A.2d 1009, cert. denied, 275 Conn. 907, 882 A.2d 668 (2005); and whether the absence of the sanction would result in prejudice to the party seeking the sanction. *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 47, 830 A.2d 240 (2003). Upon considering each of these factors, we conclude that the court did not abuse its discretion in rendering a default judgment.

We recognize that the discovery sanction imposed by the court, a default judgment, is the most severe a court may impose.[9] We further recognize that the evidence sought by the plaintiff, disclosure of the defendants' assets, is immaterial to the determination of liability in what essentially amounts to a collections case.

---

[9] "[T]he court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort." (Citations omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16–17. As "[t]he reasoning of *Millbrook Owners Association, Inc.*, applies equally to nonsuits and dismissals;" *Blinkoff* v. *O & G Industries, Inc.*, supra, 89 Conn. App. 258; it applies equally to defaults as well.

Nonetheless, we conclude that the court was well within its discretion to issue a sanction of last resort, given the attendant circumstances. In coming to this conclusion, we place particular emphasis on the defendants' conduct leading to their violation of the court's January 23, 2006 order, as well as our conclusion that the plaintiff would have been prejudiced absent the sanction as imposed.

The defendants' conduct leading to their noncompliance with the court's January 23, 2006 order demonstrates that this noncompliance was most certainly wilful. The defendants had first been ordered to disclose documents on August 22, 2005, close to eight months prior to the court's rendering of the default judgment. The defendants thereafter engaged in a pattern of delay tactics, which involved entirely failing to attend one deposition, withholding documents and other information from their own attorney and the wholesale failure to produce a single asset related document for nearly eight months.[10] Furthermore, at the hearing on April 10, 2006, the defendants did not attempt to set forth any good faith reason for their noncompliance. Instead, the defendants' attorney disclosed relevant documents "to the extent that [he] was able to obtain that information." On the basis of the defendants' nonchalant attitude toward the court's August 23 and November 14, 2005 discovery orders, it would be difficult for us to conclude that the defendants' violation of the January 23, 2006 order was anything but wilful.

---

[10] The defendants also appeared at a second deposition during which they invoked their fifth amendment privilege against self-incrimination in response to each and every question posed. Although the defendants certainly were entitled to invoke this privilege, we note that "[t]he fifth amendment privilege against self-incrimination . . . does not . . . forbid the drawing of adverse inferences against parties to civil actions [who] refuse to testify in response to probative evidence offered against them." (Citation omitted.) *Olin Corp.* v. *Castells,* 180 Conn. 49, 53, 428 A.2d 319 (1980).

Additionally, prejudice to the plaintiff would have resulted from the failure to impose a default judgment. The court stated, and we agree, that alternative sanctions would have been unlikely to result in the disclosure of the documents at issue.[11] The defendants are involved in complex bankruptcy and federal criminal tax and financial proceedings. Absent the sanction of a default judgment, by the time the plaintiff may have been made aware of the defendants' assets, if at all, his prejudgment remedy, and any favorable judgment obtained at trial, may well have become impossible for the plaintiff to enforce.

For the foregoing reasons, we conclude that the sanction imposed by the court was not disproportionate to the violation and, thus, did not amount to an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] Alternative sanctions likely would not be effective because the defendants not only had failed to comply with previous discovery orders but also because the court's prior imposition of sanctions had been ineffective in inducing the defendants' compliance. Indeed, even after the court imposed the sanction of attorney's fees on November 14, 2005, the defendants continued to conceal documents from their own attorney, the plaintiff and the court.