ANNA-MARIE GIBLEN *v.* ZOHER GHOGAWALA
(AC 28997)

Bishop, Beach and Borden, Js.

Argued October 21—officially released December 9, 2008

*Geoffrey S. Brandner*, with whom, on the brief, was *John Lino Ponzini*, for the appellant (plaintiff).

*Richard A. O'Connor*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Anna-Marie Giblen, appeals from the summary judgment rendered by the trial court

in favor of the defendant, Zoher Ghogawala. The plaintiff claims on appeal that the court improperly denied her motion to modify the scheduling order following the preclusion of the testimony of her expert witness, which preclusion formed the basis for the court's subsequent rendering of summary judgment. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of the plaintiff's appeal. The plaintiff filed this medical malpractice action on June 1, 2004, alleging that the defendant deviated from the standard of care during a February 15, 2002 surgery that he performed to alleviate her complaints of thigh, back and hip pain. Following the surgery, the plaintiff continued to seek treatment from the defendant but, because her pain eventually returned and persisted, she sought a second opinion. On October 4, 2003, the plaintiff underwent another surgery performed by a different surgeon and made nearly a full recovery. The plaintiff sought damages for the period of time between her two surgeries, alleging that during this time, she was in pain as a result of the defendant's alleged negligence. She further alleged that her second surgery was necessitated by the defendant's negligence in her initial surgery.

On October 25, 2005, the court entered a scheduling order establishing various discovery deadlines and a trial date of July 10, 2007. Pursuant to the scheduling order, the plaintiff was ordered to disclose her expert witnesses by June 2, 2006. On June 12, 2006, the defendant filed a motion to preclude the plaintiff from introducing expert testimony on the grounds that she had not disclosed her expert in accordance with the scheduling order and that this failure was prejudicial to him. The plaintiff did not file an objection, or any other response, to this motion. Thereafter, on August 7, 2006, the court

granted the motion to preclude on the basis of the plaintiff's failure to comply with the scheduling order.

On November 21, 2006, the plaintiff filed a motion to modify the scheduling order. At the same time, the plaintiff disclosed her expert witness, the physician who had performed the second surgery. In the motion to modify, the plaintiff claimed that the late disclosure of her expert was caused by factors beyond her control in that her expert resides and practices medicine in Peru. The defendant objected to the motion to modify, citing the plaintiff's failure to indicate a good faith reason for lateness of the disclosure and the fact that the plaintiff did not indicate a willingness to make her expert available for deposition in the United States. On December 18, 2006, the court denied the motion to modify on the basis of the plaintiff's failure to comply with the scheduling order and the previous preclusion of her expert.

On January 4, 2007, the plaintiff filed a motion to reargue her motion to modify the scheduling order. In her motion, the plaintiff indicated that it had not been possible to disclose her expert earlier because her expert was located in Peru and "was involved in a personal injury which interfered with his communications with the plaintiff and plaintiff's counsel." The plaintiff further averred that she had traveled to Peru to obtain the specific medical language and opinion of her expert that was necessary to satisfy the rules of practice. The plaintiff offered to transport her expert to the New York area, at her expense, for deposition and suggested that modifying the scheduling order would not interfere with the July, 2007 trial date. The defendant filed an objection, and, on January 12, 2007, the plaintiff filed a reply to the defendant's objection, suggesting that the trial date would not be affected by a modification of the scheduling order because the defendant had disclosed his expert and the plaintiff was

ready to take the deposition of the defendant's expert at any time. On January 23, 2007, the court denied the plaintiff's motion to reargue.

The defendant subsequently filed a motion for summary judgment premised on the preclusion order and the consequent inability of the plaintiff to establish a prima facie case of medical malpractice without expert testimony.[1] On June 25, 2007, the court rendered summary judgment in favor of the defendant and this appeal followed.

Our Supreme Court has articulated the standard for imposing and reviewing sanctions for violation of discovery orders. The court held that "for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. . . . Second, the record must establish that the order was in fact violated. . . . Third, the sanction imposed must be proportional to the violation." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

Here, the plaintiff does not claim that the orders were unclear or that she did not violate the discovery orders. Rather, the plaintiff argues that the sanctions ordered by the court were not proportional to the violation. We must, therefore, consider whether the court abused its discretion in ordering sanctions that were not proportional to the violation. See id., 18.

"[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to

---

[1] "To prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Vitone* v. *Waterbury Hospital,* 88 Conn. App. 347, 351–52 n.4, 869 A.2d 672 (2005).

be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves . . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort. . . . [T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court." (Citations omitted; internal quotation marks omitted.) Id., 16–17.

"In determining the proportionality of a sanction to a violation, we have in the past considered the severity of the sanction imposed and the materiality of the evidence sought . . . whether the violation was inadvertent or wilful . . . and whether the absence of the sanction would result in prejudice to the party seeking the sanction." (Citations omitted.) *Forster* v. *Gianopoulos*, 105 Conn. App. 702, 711, 939 A.2d 1242 (2008).

As noted, a plaintiff must adduce expert testimony in support of a complaint sounding in medical malpractice in order to establish a prima facie case. Because

of the materiality of such evidence, serious attention and consideration must be given to its proper disclosure or preclusion. Although the plaintiff's disclosure violated the scheduling order, the plaintiff's explanation that she was having difficulties communicating with her expert because he was in Peru and had suffered a personal injury prevent us from concluding that she acted in bad faith, particularly in the absence of such a finding by the trial court.

Additionally, when the plaintiff disclosed her expert, there were still more than seven months remaining before the commencement of jury selection and trial. The record reveals that the defendant disclosed his expert witness on October 30, 2006, before the plaintiff disclosed her expert and moved to modify the scheduling order. Thus, the defendant could not reasonably claim that the plaintiff's late disclosure prejudiced his ability to prepare for trial. Although we have previously upheld sanctions when expert disclosures were delayed and interfered with the orderly progress of trial, in this case, there was no claim by the defendant and no finding by the court that the late disclosure of the plaintiff's expert would interfere with the trial date. We therefore conclude that the preclusion of the plaintiff's expert was disproportionate to her violation of the scheduling order and that the court, therefore, improperly rendered summary judgment in favor of the defendant.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.