******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANGELA PICARD *v.* THE GUILFORD
HOUSE, LLC, ET AL.
(AC 39856)

Alvord, Sheldon and Keller, Js.

*Syllabus*

The plaintiff in error, L, the former attorney for the plaintiff in the underlying
action, brought this writ of error to challenge the trial court's imposition
of financial sanctions against her for her alleged misconduct while con-
ducting an out-of-state deposition in the underlying action. L claimed,
inter alia, that the imposition of sanctions against her was barred by
res judicata and collateral estoppel because the statewide grievance
committee (committee) already had acted on the matter by issuing a
reprimand in connection with a grievance proceeding brought against
her, and that the underlying defendants should have been collaterally
estopped from seeking court imposed sanctions because they were in
privity with the committee. *Held*:

1. The trial court's order imposing financial sanctions on L was proper,
   as there was no privity between the underlying defendants and the
   committee, and, thus, the imposition of costs on the plaintiff was not
   barred by the doctrines of res judicata and collateral estoppel: the
   underlying defendants were not a party to the grievance proceeding
   that led to L's reprimand and played no role in bringing L's alleged
   misconduct to the notice of the committee, which played no role in the
   underlying case in which the misconduct had occurred, and not only
   were the parties in the separate proceedings not the same, but their
   interests in such proceedings were entirely different in that the commit-
   tee was concerned with protecting the public from attorney misconduct
   and the defendants were trying to recover costs and fees incurred due
   to the alleged misconduct; moreover, even if there was privity between
   the defendants and the committee, res judicata and collateral estoppel
   could not apply to bar the sanctions imposed in that, although the trial
   court did not determine the precise amount of financial sanctions on
   the date that it granted the defendants' motion for sanctions, it granted
   that motion before the matter was forwarded to the committee such
   that the committee's later imposition of discipline on L could not have
   precluded the trial court's earlier imposition of sanctions on her.

2. L's claim that the sanctions imposed against her were not proportional
   to her proven misconduct and, thus, were improperly punitive was
   unavailing, as the trial court reasonably could have found that the
   amount of the sanctions imposed was appropriate and did not abuse
   its discretion in awarding the amount of financial sanctions that it did
   against L: that court imposed sanctions on L based on costs and attor-
   ney's fees incurred by the defendants that directly stemmed from L's
   misconduct during the deposition, and it did not impose as sanctions
   on L any of the costs or fees incurred in the defense of a grievance
   proceeding brought by the underlying plaintiff against the defendants'
   attorney, as requested by the defendants, which further supported the
   reasonableness of the sanctions imposed; moreover, the court could
   have found that the total amount of sanctions imposed was reasonable
   because the issues raised through L's conduct were unusual, and
   required rapid and substantial legal work by the defendants' counsel,
   and because the court could have found that the complexity of the legal
   issues raised reasonably resulted in more of the defendants' lawyers
   billing more time.

Argued September 15—officially released November 21, 2017

*Procedural History*

Writ of error from the decision of the Superior Court
in the judicial district of Hartford, *Miller, J.*, granting
the defendants' motions for sanctions, brought to the
Supreme Court, which transferred the matter to this

court. *Writ of error dismissed.*

*Norman Pattis*, for the appellant (plaintiff in error Linda Lehmann).

*Christopher H. Blau*, with whom, was *David J. Robertson*, and, on the brief, were *Madonna A. Sacco* and *Heidi M. Cilano*, for the appellees (defendants).

*Opinion*

SHELDON, J. This matter comes before this court on a writ of error brought by the plaintiff in error, Linda Lehmann, former attorney for the plaintiff in the underlying action, Angela Picard.[1] The plaintiff in error challenges the order of the trial court, *Miller, J.*[2] imposing financial sanctions upon her for misconduct while conducting an out-of-state deposition in the underlying action. We conclude that the court did not abuse its discretion in imposing the challenged sanctions. Accordingly, we dismiss the writ of error.

The record discloses the following relevant facts and procedural history. The underlying wrongful death action was commenced in October, 2010. Picard alleged that her decedent died due to medical malpractice by the defendant Victor Sawicki, a physician,[3] and independent negligence by the Guilford House defendants and by the defendant 109 West Lake Avenue, LLC.

The plaintiff in error noticed the deposition of Cathleen O'Connor, a former administrator at The Guilford House, LLC, for November 1, 2013, in Augusta, Maine. After the O'Connor deposition recessed, the Guilford House defendants filed a motion for a protective order on November 27, 2013, in which they requested the court to enter an order terminating the deposition based upon the plaintiff in error's allegedly inappropriate and unprofessional conduct in connection therewith. This motion was followed by a second motion filed on December 5, 2013, in which the Guilford House defendants sought both to disqualify the plaintiff in error as counsel in the underlying action and to impose financial sanctions upon her to remunerate them for costs and attorney's fees they claimed to have incurred as a result of the plaintiff in error's alleged misconduct. After the filing of the latter motion, the court ordered all counsel to provide it, by e-mail and hard copy, copies of all depositions taken in the case to date, as well as DVD copies of all depositions that thus far had been recorded. In compliance with this order, the plaintiff in error disclosed, inter alia, that she had made an iPhone voice memo recording of the O'Connor deposition, which she submitted to the court ex parte, claiming that her client was entitled by privilege not to disclose it to the defendants. The court thereafter ruled that the recording was not in fact privileged, and so ordered the plaintiff in error to deliver copies of it to all opposing counsel.

Upon listening to the recording, counsel for the Guilford House defendants realized that it contained not only on-the-record statements from the deposition but off-the-record conversations between O'Connor and The Guilford House counsel, and The Guilford House counsel and counsel for the other defendants. The Guilford House defendants subsequently filed a supplemen-

tal motion on January 3, 2014, in which they renewed their requests to disqualify the plaintiff in error as counsel in the underlying action and to impose financial sanctions upon her as a result of her misconduct in connection with the O'Connor deposition. The Guilford House defendants also filed a motion for order on January 8, 2014, in which they requested that the court not listen to the recording. To avoid creating possible grounds for his recusal, Judge Miller requested another judicial authority, *Dewey*, *J.*, to conduct a hearing on what to do with the recording. Judge Dewey heard the parties on the issues raised in the January 8 motion on January 17, 2014. At the hearing, Judge Dewey ordered that all copies of the recording be placed under seal in the custody of Judge Miller and that the plaintiff in error provide written assurances to the court and the defendants that the recording had been completely and permanently deleted from her phone.[4]

In a memorandum of decision dated April 3, 2014, the court, *Miller, J.*, granted the Guilford House defendants' January 3 motion for sanctions. The court imposed these sanctions upon the plaintiff in error based upon its established authority to do so in response to an attorney's "course of . . . dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 234, 963 A.2d 943 (2009). Based upon the transcripts of the O'Connor deposition and the hearing before Judge Dewey, as well as pleadings and correspondence between the plaintiff and the defendants' counsel and between counsel and the court, the court described the O'Connor deposition as "unusually contentious" and found that the plaintiff in error's conduct during the deposition was so inappropriate as to warrant the imposition of sanctions. The court ruled that such sanctionable conduct included: scheduling the deposition to end at an unusually early hour without informing the defendants' counsel of that arrangement until after the deposition had begun;[5] conducting an unfocused examination not likely to lead to relevant or discoverable information from the witness, in violation of Practice Book § 13-30 (c);[6] failing to ask for explanations to objections by nonquestioning attorneys, as permitted by Practice Book § 13-30 (b),[7] which might have made the deposition go more smoothly and productively; and being rude. It also found that the plaintiff in error's unconsented to recording of the O'Connor deposition, particularly of the off-the-record conversations between lead counsel for the Guilford House defendants and counsel for Dr. Sawicki and between lead counsel for the Guilford House defendants and the deponent, was improper and violated Practice Book § 13-27 (f).[8] The court made no finding as to whether the plaintiff in error had violated the Rules of Professional

Conduct. It did, however, state that such violations might have occurred, and thus it sent its decision to the statewide disciplinary counsel for such further investigation and action as it deemed appropriate, along with a recommendation for an interim suspension of the plaintiff in error.[9] The court conducted a hearing on October 19, 2015, to hear evidence and oral argument as to the amount of sanctions it should impose.

Thereafter, in a memorandum of decision dated July 14, 2016, the court specified the amount of the financial sanctions to be imposed upon the plaintiff in error. The Guilford House defendants had claimed, in an affidavit from their counsel, that they had incurred costs and attorney's fees totaling $72,558.84 for services rendered in connection with the deposition and all subsequent proceedings to which it gave rise. The court disallowed $12,187 of such costs and fees, which were incurred for services rendered in defense of a separate grievance filed by the underlying plaintiff against lead counsel for the Guilford House defendants, Madonna Sacco, in connection with the O'Connor deposition. In sum, the court awarded $60,371.84 in financial sanctions against the plaintiff in error, to be paid directly to counsel for the Guilford House defendants. This writ of error followed.

The plaintiff in error contends that it is a matter of first impression in Connecticut as to "whether financial sanctions are . . . appropriate as a matter of law where . . . a lawyer is grieved for conduct arising out of litigation, and the matter is resolved by the grievance process." She argues that the imposition of sanctions against her in the form of costs was barred by res judicata because the statewide grievance committee had already acted on the matter. She also argues that the Guilford House defendants should be collaterally estopped from seeking costs in the form of court-imposed sanctions upon her because their counsel was in privity with the statewide grievance counsel in the grievance proceeding and the statewide grievance committee fully and fairly litigated the misconduct for which the Guilford House defendants requested sanctions from the trial court. Finally, she argues that the amount of sanctions imposed upon her was not proportional to her violation, and thus constituted an abuse of the court's discretion. We reject the plaintiff in error's claims.

The plaintiff in error first argues that the imposition of sanctions in the form of costs was barred by principles of res judicata and collateral estoppel as a result of the statewide grievance committee's prior issuance of a reprimand to her based upon the same alleged misconduct that underlay the court's order of sanctions against her.

"Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the

doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Although the two doctrines are distinct from each other, both operate only against the same parties or those in privity with them. While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citations omitted; internal quotation marks omitted.) *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 818, 633 A.2d 282 (1993).

"In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel [or res judicata] should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 301 Conn. 194, 207, 21 A.3d 709 (2011). See also *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 735, 54 A.3d 584 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013) ("[t]he crowning consideration . . . [in regard to] the basic requirement of privity . . . [is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [res judicata] is not inequitable" [internal quotation marks omitted]).

While the plaintiff in error acknowledges that the Guilford House defendants were not a party to the grievance proceeding that led to her reprimand, she argues that they were in privity with the statewide grievance committee because the claims litigated against her in the grievance proceeding were identical to those for which she was sanctioned by Judge Miller. She also argues that the Guilford House defendants were in privity with the statewide grievance committee because the Guilford House defendants and the statewide grievance committee were "in the same functional relationship with [her] when considering whether [her] conduct . . . warrant[ed] sanctions." She further argues that because the statewide grievance committee had the ability to impose costs and fines against her as a poten-

tial sanction, the Guilford House defendants should be barred from recovering costs from her in the form of sanctions imposed upon her by the trial court. No privity exists here between the statewide grievance committee and the Guilford House defendants; thus, we are not persuaded by her argument.

Our Supreme Court's decision in *Weiss* v. *Statewide Grievance Committee*, supra, 227 Conn. 802, is instructive. In *Weiss*, an attorney received a reprimand from the statewide grievance committee after the committee concluded that he had violated the Code of Professional Responsibility.[10] Id., 809. The attorney appealed from the reprimand to the Superior Court, which affirmed the committee's decision. Id., 804. The attorney then appealed the trial court's decision, claiming, inter alia, that the trial court had improperly concluded that the doctrines of res judicata and collateral estoppel, as applied to the settlement of his civil action against his clients, did not preclude the committee from making a finding of attorney misconduct. Id., 804-805. Specifically, the attorney argued that because both the civil complaint and the grievance complaint involved the same claims and the same allegations between the same parties on the basis of the same alleged ethical violation, the trial court should have concluded that the civil action had a preclusive effect on the statewide grievance committee's decision. Id., 817. In affirming the judgment of the trial court, our Supreme Court found that the parties to the grievance proceeding were not the same as, or in privity with, those in the civil action for two reasons. First, there are no adversary parties to grievance proceedings in the technical legal sense. Id., 819. Second, even if the statewide grievance committee could be considered a party, the parties in the civil action were only the attorney and his former clients, not the statewide grievance committee, which was not in privity with any party to that action. Id.

Just as the statewide grievance committee was not in privity with the parties in the civil action in *Weiss*, the statewide grievance committee was not in privity with the Guilford House defendants. In issuing a reprimand to the plaintiff in error, the statewide grievance committee was performing its duty "to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Johnson*, 108 Conn. App. 74, 79, 946 A.2d 1256, cert. denied, 288 Conn. 915, 954 A.2d 187 (2008). The Guilford House defendants played no role in bringing the plaintiff in error's misconduct to the notice of the statewide grievance committee, which played no role in the underlying case in which the misconduct occurred. The Guilford House defendants' interest in moving for sanctions was to recover costs and fees they had incurred due to the plaintiff in error's misconduct. Not only are the parties

not the same, but their interests in such proceedings were entirely different. Therefore, there was no privity between them. Because there was no privity, the imposition of costs upon the plaintiff in error was not barred either by res judicata or by collateral estoppel, and thus the court's order imposing financial sanctions upon her was proper.

Even if there was privity between the Guilford House defendants and the statewide grievance committee, the principles of res judicata and collateral estoppel could not apply to bar the sanctions imposed by the trial court. The trial court granted the Guilford House defendants' motion for sanctions as part of its memorandum of decision on April 3, 2014. Although the court did not determine the amount of financial sanctions on that date, it did detail the types of fees and costs that the defendants had incurred in responding to the plaintiff in error's misconduct. Only after granting the motion for sanctions did the trial court forward this matter to the statewide grievance committee, which concluded its investigation into the plaintiff in error's misconduct by issuing her a reprimand in February, 2015. Therefore, the statewide grievance committee's later imposition of discipline upon the plaintiff in error could not have precluded the trial court's earlier imposition of sanctions upon her.

The plaintiff in error also argues that the sanctions imposed against her were not proportional to her proven misconduct, and thus were improperly punitive. We do not agree.

We review for abuse of discretion whether the amount of financial sanctions imposed against a party is proportional to its sanctionable conduct. See *Usowski* v. *Jacobson*, 267 Conn. 73, 85, 836 A.2d 1167 (2003). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [T]he question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 313 Conn. 325, 336, 96 A.3d 1238 (2014).

"In determining the proportionality of a sanction to a violation, we have in the past considered the severity of the sanction imposed and the materiality of the evidence sought . . . whether the violation was inadvertent or wilful . . . and whether the absence of the sanction would result in prejudice to the party seeking the sanction." (Citations omitted.) *Forster* v. *Gianopou-*

*lous*, 105 Conn. App. 702, 711, 939 A.2d 1242 (2008).

On the basis of our review of the record, we conclude that the court reasonably could have found that the amount of the sanctions imposed was appropriate. The court found, following the October 19, 2015 hearing, that the Guilford House defendants had incurred the following costs and attorney's fees, all directly stemming from the plaintiff in error's misconduct during and related to the O'Connor deposition. First, the defendants incurred legal expenses while opposing an appeal taken by the plaintiff in error from the trial court's April 3, 2014 decision. The court held that, although this appeal was taken in Picard's name, it was brought solely to challenge the sanctions imposed upon the plaintiff in error, and therefore, the reasonable and necessary costs of Guilford House counsel in opposing the appeal and seeking its dismissal were properly part of the financial sanctions imposed upon the plaintiff in error. Second, the defendants incurred fees for the appearance of their counsel at the O'Connor deposition, as well as travel and other related expenses.[11] Third, the defendants incurred the costs of obtaining the transcript of the O'Connor deposition. Fourth, the defendants incurred attorney's fees for filing motions and responding to motions the plaintiff in error filed following the deposition. Fifth, the defendants incurred attorney's fees for their counsel's attendance at the hearings before Judge Miller and Judge Dewey concerning issues related to the deposition and the motions for sanctions. Sixth and finally, the defendants incurred various other fees and expenses in responding, through counsel, to miscellaneous, related matters.

As we discussed previously in this opinion, the court did not impose as sanctions upon the plaintiff in error any of the costs or fees incurred in the defense of a separate grievance brought by Picard against the Guilford House defendants' lead attorney. Despite the defendants' contention that it was the plaintiff in error who wrongfully filed that grievance, the court held that the record to support such a contention was inadequate and that awarding such costs could improperly deter future grievance filings against attorneys in Connecticut. The court's analysis and denial of this requested cost further supports the reasonableness of the sanctions that the court did impose upon the plaintiff in error.

The plaintiff in error challenged as unreasonable the amount of money and the number of lawyers that the Guilford House defendants claimed were necessary in responding to her misconduct, which the court accepted in determining the amount of financial sanctions to impose upon her. The trial court could have found that the total amount of sanctions imposed was reasonable because the issues raised through the plaintiff in error's conduct were unusual, and required rapid

and substantial legal work by the defendants' counsel. The court also could have found that the complexity of the legal issues raised reasonably resulted in more of the defendants' lawyers billing more time. The court did not abuse its discretion in imposing the amount of sanctions it did upon the plaintiff in error.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] The writ of error was properly filed in our Supreme Court, which, pursuant to Practice Book § 65-1, transferred the matter to this court.

[2] The plaintiff in error served the writ of error on Judge Miller. Although the Office of the Attorney General accepted service of the writ of error on behalf of Judge Miller, it did not enter an appearance on his behalf or file a brief in his defense. On appeal, the law firm of Heidell, Pittoni, Murphy & Bach, LLP, counsel for the defendants The Guilford House, LLC and Guilford Holding Company, LLC (Guilford House defendants) filed a brief in response to the brief of the plaintiff in error and appeared for oral argument.

[3] Dr. Sawicki was represented by separate counsel in the underlying action. Although he filed an appearance in the writ of error, he did not file a responding brief.

[4] The record suggests that neither Judge Miller nor Judge Dewey ever listened to the recording.

[5] The court noted that the plaintiff in error knew that the conference room she had reserved for the deposition would only be available until 3:15 p.m., but she did not inform opposing counsel of this time limitation until 11 a.m. that same day.

[6] Practice Book § 13-30 (c) provides in relevant part: "At any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending may order the officer conducting the examination forthwith to cease taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Section 13-5."

[7] Practice Book § 13-30 (b) provides in relevant part: "All objections made at the time of the examination to the qualifications of the officer taking the deposition, or to the manner of taking it, or to the evidence presented, or to the conduct of any party, and any other objection to the proceedings, shall be noted by the officer upon the deposition. . . . Every objection raised during a deposition shall be stated succinctly and framed so as not to suggest an answer to the deponent and, at the request of the questioning attorney, shall include a clear statement as to any defect in form or other basis of error or irregularity."

[8] Practice Book § 13-27 (f) (2) provides in relevant part that "a deposition may be recorded by videotape without prior court approval if (i) any party desiring to videotape the deposition provides written notice of the videotaping to all parties in either the notice of deposition or other notice served in the same manner as a notice of deposition and (ii) the deposition is also recorded stenographically."

[9] At oral argument before this court, the plaintiff in error's counsel clarified that this grievance was resolved by way of a reprimand in February, 2015. It is outside the record whether assessing the cost of attorney's fees was discussed at the grievance hearing.

[10] The attorney's conduct occurred prior to the adoption of the Rules of Professional Conduct.

[11] The court considered reducing the amount of the sanctions by the percentage of testimony from the O'Connor deposition that could be useful in future proceedings in the underlying action. After considering the plaintiff in error's testimony and arguments at the October, 2015 hearing, the court concluded that there was no evidence that any part of the deposition could be useable, and therefore did not reduce the amount of sanctions related to the costs of the deposition.